873 A.2d 434

Francesco Alexjandre KELLY

v.

STATE of Maryland.

No. 1444, Sept. Term, 2003.

Court of Special Appeals of Maryland.

May 2, 2005.

126

Michael P. Lytle (Byron L. Warnken, on the brief), Baltimore, for appellant.

Devy Patterson Russell (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Panel: SALMON, BARBERA and LAWRENCE F. RODOWSKY (Retired, specially assigned), JJ.

BARBERA, J.

On May 22, 2003, a jury in the Circuit Court for Montgomery County convicted appellant, Francesco Alexjandre Kelly, of two counts each of attempted first degree murder, attempt-

ed second degree murder, first degree assault, and use of a handgun in the commission of a felony or crime of violence. The court merged the first degree assault conviction into the attempted first degree murder conviction and sentenced appellant to a total of 40 years' imprisonment on the remaining convictions.[1]

Appellant seeks reversal of his convictions on several grounds. Principal among them is the claim that he was denied the right to be present at every stage of the trial. Finding no cause to disturb the judgments, we affirm.

## FACTUAL BACKGROUND

The tragic events of this case began to unfold around 11:00 p.m. on October 31, 2002. At that time, Ibrahim Sidibe, his fiancee, Melissa Wainwright, and Sidibe's best friend, Nicholas Watson, were riding together on a public transit bus. They were on their way home from City Place Mall, in Silver Spring, Maryland, where Sidibe had been performing as the character Spiderman at a children's Halloween party.

During the bus ride, Wainwright noticed appellant seated across from them, wearing headphones and "bobbing his head up and down," evidently in time with the music. Wainwright made a remark about appellant that caused Watson and others on the bus to laugh. Appellant responded with a derogatory comment about Wainwright, precipitating an angry exchange between Watson and appellant. The episode ended within a minute and a half, without further trouble at that time.

Shortly thereafter, Sidibe, Wainwright, and Watson got off the bus at the stop in front of a 7–Eleven Store in the White Oak area of Silver Spring. Appellant remained on the bus, but he and Watson made "eye contact" as Watson left the bus.

The three friends went into the 7–Eleven to get something to eat and drink, then returned to the bus stop to await the arrival of the next bus. Sidibe was wearing his headphones

---

1. Appellant was 16 years old when he committed these offenses. His motion for transfer of jurisdiction to the juvenile court was denied.

and stood about 12 to 15 feet away from Watson and Wainwright. After ten minutes or so, Wainwright and Watson heard a gun shot.

Wainwright, who was six months pregnant at the time, turned and recognized the shooter as the person about whom she had made the comment on the bus. She took off running in the direction of the 7–Eleven, hearing additional gun shots as she ran. Wainwright fell twice in her efforts to get to the store, but was able to reach it and get inside without being injured.

Watson did not immediately flee upon hearing the gun shot. Instead, he turned in the direction of Sidibe in time to see him fall to the ground. Watson saw a "shadowy figure" standing above Sidibe and pointing a gun directly at Sidibe. The figure lifted his head and pointed the weapon at Watson. Watson saw that it was "the kid from the bus," *i.e.*, appellant.

Watson took off running toward the 7–Eleven. Appellant fired at Watson as he ran, shooting him six times, once each in the arm, the back of his head, the right buttock, the right middle finger, the shoulder, and the chest. Watson was able to reach the store, and urged the store clerk to call the police or an ambulance. The police and emergency medical personnel arrived shortly thereafter.

Watson and Wainwright described the shooter to the police. The description was broadcasted to officers in the area. Shortly thereafter, the police stopped appellant at a location about a mile from the scene of the shooting. The police transported Wainwright to that location for a show-up. Wainwright identified appellant as the shooter. Appellant was then arrested and taken to the police station.

At the hospital several hours after the shooting and after emerging from surgery, Watson was shown a photographic array that included a photograph of appellant taken earlier that night at the police station. Watson selected appellant's photograph as depicting the shooter.

Sidibe, who was paralyzed as a result of the shooting, was able to testify about the events on the bus and before the shooting, but was unable to describe the shooter or testify in detail about the shooting itself. He did testify, however, that he had been shot in the forehead, and injured his neck when he fell to the ground.

Both Watson and Wainwright identified appellant at trial as the person who had been on the bus with them and later shot Watson and Sidibe.

Following conviction and sentencing, appellant noted a timely appeal, raising four issues:

1. Whether the court committed reversible error when it refused to permit appellant to be present at a bench conference to discuss an alleged discovery violation.

2. Whether the court committed reversible error when it refused to permit the defense to call two witnesses who were present and available to testify.

3. Whether the court committed reversible error when it refused the defense request to poll the jury and, instead, required the jury to re-deliberate, after the foreperson twice announced a "not guilty" verdict on attempted second degree murder.

4. Whether the court committed reversible error when it accepted "guilty" verdicts on a greater offense after the jury rendered "not guilty" verdicts on lesser included offenses.

We shall add facts as they pertain to our discussion of each issue.

## DISCUSSION

### I.

Appellant's first argument implicates the right of a criminal defendant under the Sixth and Fourteenth Amendments to the United States Constitution, Maryland's common law, its Declaration of Rights, and its Rules of Procedure, to be present at every stage of the trial. Appellant contends that the trial court denied him this right when it refused his counsel's

request that he be present for a conference concerning whether the State had committed a discovery violation. We conclude that the court correctly ruled that appellant was not entitled to be present at that conference.

## A. Setting the stage

Defense counsel brought the alleged discovery violation to the attention of the trial court, the Honorable Michael D. Mason, during a break in proceedings after the jury was selected but before it was sworn. In the presence of appellant, defense counsel informed the court that the State had included one Christian Phillips on its witness list. Counsel reported that she had asked the prosecutors about Phillips's identity and was told that he was a "jailhouse snitch" who had come to the State's attention two weeks before trial. The prosecutors told defense counsel that Phillips was prepared to testify that appellant confessed to Phillips his involvement in the shootings. Defense counsel denied receiving any information about Phillips before trial and objected to the State's calling him as a witness.[2]

The prosecutors in turn explained that they had learned of appellant's statement to Phillips through Phillips's counsel. After interviewing Phillips, they informed defense counsel by letter that he might be called as a witness. Defense counsel denied receiving the letter. Before the matter was resolved, the prosecutors said that they had not yet decided whether they would be calling Phillips to testify. The court therefore tabled further discussion until such time as the State decided that it wanted Phillips to testify.

The jury was sworn soon thereafter and trial began. On the evening of the second day of trial, after the jury had been excused for the day, the prosecutors notified the court that the State wanted Phillips to testify. The defense again objected.

---

2. See Maryland Rule 4–263(b)(1), requiring the State to disclose to the defense, upon request, "the name and address of each person then known whom the State intends to call as a witness at the hearing or trial to prove its case in chief or to rebut alibi testimony[.]"

As the court prepared to take up the issue, defense counsel asked that appellant, who was then still in the courtroom, be permitted to be present for the discussion. The court denied the request, reasoning that no testimony would be taken; the question for decision was simply whether, based on the State's proffer of what Phillips might say, the State would be permitted to call him; and, if Phillips were permitted to testify, appellant would have his right of cross-examination. The court then told the sheriffs that they could "take [the defendant] because it is close to 6:00."

The discussion turned to whether and when the State had informed the defense that Phillips might be a State's witness. While explaining how Phillips had come to the State's attention, the prosecutors proffered what he would say if permitted to testify.

The defense again disputed the State's assertion that it had informed the defense promptly upon learning that Phillips might be a State's witness. Defense counsel argued that it was "patently unfair" to allow the State to call Phillips, pointing out that the defense had been given no opportunity to interview him.

The court ruled that Phillips could testify, but only after the defense had a chance to speak with him. The court and counsel then discussed the extent to which Phillips could be impeached with prior convictions. When that issue was resolved, the conference ended. The defense interviewed Phillips before he testified on the following day.

### B. The Constitutional and Common Law Principles Involved

██ The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." The right of confrontation is made applicable to the states through the Fourteenth Amendment, *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), and encompasses the right of the criminal defen-

dant "to be present in the courtroom at every stage of his trial," *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

■ The federal constitutional right to be present, though based to a large extent upon the Confrontation Clause, also has a due process component. That is, the right is not restricted to situations in which the defendant is "actually confronting witnesses or evidence against him," but includes all trial-related proceedings at which the defendant's presence "has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105–06, 54 S.Ct. 330, 78 L.Ed. 674 (1934)).

■ In addition to the protections afforded by the federal constitution, a criminal defendant's right to be present at all stages of trial is one recognized at common law, and is preserved by Articles 5 and 21 of the Maryland Declaration of Rights. *See Tweedy v. State*, 380 Md. 475, 490–91, 845 A.2d 1215 (2004); *Pinkney v. State*, 350 Md. 201, 209, 711 A.2d 205 (1998); *Stewart v. State*, 334 Md. 213, 224, 638 A.2d 754 (1994); *Bunch v. State*, 281 Md. 680, 683–84, 381 A.2d 1142 (1978).

Maryland Rule 4–231 implements the right to be present. *Tweedy*, 380 Md. at 491, 845 A.2d 1215. The rule provides, in pertinent part:

(a) **When presence required.** A defendant shall be present at all times when required by the court. A corporation may be present by counsel.

(b) **Right to be present—Exceptions.** A defendant is entitled to be present at a preliminary hearing and every stage of the trial, except (1) at a conference or argument on a question of law; (2) when a nolle prosequi or stet is entered pursuant to Rules 4–247 and 4–248; or (3) at a reduction of sentence pursuant to Rules 4–344 and 4–345.

As subsection (b)(1) of Rule 4–231 makes clear, a defendant is not entitled to be present "at a conference or argument on a question of law." [3] This subsection (as well as subsections (2) and (3)) embodies the recognition that the constitutional and common law right to be present is not absolute.[4] Rather, the question of whether the defendant's right to be present extends to a particular proceeding, such as a bench conference, is answered by reference to whether the content of the proceeding relates to the function of the right. As Justice Cardozo wrote for the Supreme Court of the United States in *Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), the Constitution does not assure "the privilege of presence when presence would be useless, or the benefit but a shadow." *Id.* at 106–07, 54 S.Ct. 330.

*Snyder* involved a defendant on trial for murder who claimed that his right to due process was abridged when he was denied the right to be present at the jury's inspection of the crime scene. The prosecutor (as well as defense counsel) was permitted to point out to the jury the "essential features" of the crime scene. *Id.* at 110, 54 S.Ct. 330. The Supreme Court held that due process was not violated because the defendant could not have been of assistance to his counsel, had he been present. *Id.* at 116–22, 54 S.Ct. 330.

---

**3.** Rule 43 of the Federal Rules of Criminal Procedure addresses a criminal defendant's right to be present at every stage of the trial, and contains an exception identical to that found in Maryland Rule 4–231(b)(1): "A defendant need not be present [when] ... [t]he proceeding involves only a conference or hearing on a question of law." FED.R.CRIM.P. 43(b)(3). The predecessor rule to Maryland Rule 4–231 "is virtually a *pro tanto* adoption of Rule 49 of the Uniform Rules of Criminal Procedure (1952) proposed by the National Conference of Commissioners on Uniform State Laws," and "[t]he progenitor of Rule 49 of the Uniform Rules of Criminal Procedure ... is Rule 43 of the Federal Rules of Criminal Procedure." *Brown v. State*, 272 Md. 450, 456–57, 464, 325 A.2d 557 (1974).

**4.** The right to be present at every stage of the trial can be waived by the defendant. *See* Rule 4–231(c); *Tweedy*, 380 Md. at 492–94, 845 A.2d 1215; *see also Williams v. State*, 292 Md. 201, 217–19, 438 A.2d 1301 (1981) (holding that the common law right to be present at every stage of trial "should [ ] be modified in light of present conditions" to permit waiver). Waiver is not at issue in this case.

The Supreme Court applied this analysis in *Kentucky v. Stincer*, 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). That case involved a challenge to the defendant's, but not his counsel's, exclusion from a chambers hearing at which the trial court made a preliminary ruling on the question of whether two young children were competent to testify. The Supreme Court held that the exclusion of the defendant from this conference did not compromise his right to confront the witnesses through cross-examination. *Id.* at 740, 107 S.Ct. 2658.

As for the defendant's assertion that he was deprived of due process, the Court restated in *Stincer* what it had said in *Snyder*: "[D]ue process clearly requires that a defendant be allowed to be present 'to the extent that a fair and just hearing would be thwarted by his absence.'" 482 U.S. at 745, 107 S.Ct. 2658 (quoting *Snyder*, 291 U.S. at 108, 54 S.Ct. 330). Consequently, the *Stincer* Court stated, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Id.* The Court concluded that the defendant had not been denied due process because his presence did not bear "a substantial relationship to [the] defendant's opportunity better to defend himself at trial." *Id.* at 746, 107 S.Ct. 2658. The Court relied upon the facts that the questions asked of the child witnesses at the hearing did not relate to the crime itself, many of the questions were repeated at trial, the children were subjected to "full and complete" cross-examination at trial, and the judge's preliminary ruling was subject to reconsideration in light of the witnesses' trial testimony. *Id.* at 740–46, 107 S.Ct. 2658.

The Maryland cases follow this analysis when considering whether the defendant's absence at a conference or argument of counsel worked a due process deprivation. *See, e.g., Henry v. State*, 324 Md. 204, 226–27, 596 A.2d 1024 (1991) (holding that the defendant did not suffer a due process violation because he was unable to establish that his presence at any specific conference would have contributed to the fairness of the procedure); *Brown v. State*, 272 Md. 450, 476–77, 325 A.2d

557 (1974) (holding that a chambers conference, at which the court and counsel agreed on how certain photographic evidence would be introduced, was not a stage of trial requiring the defendant's presence because the matter discussed "bore no reasonable and substantial relationship to the opportunity of the [defendant] to defend"); *Martin v. State*, 228 Md. 311, 316–17, 179 A.2d 865 (1962) (holding that a chambers hearing on a motion for directed verdict involved "a law argument" and therefore defendant's presence was not required); *Sewell v. State*, 34 Md.App. 691, 698, 368 A.2d 1111 (holding that a chambers conference on the State's motion *in limine* that an informant's identity not be disclosed at trial was "exclusively a discussion of law" and not a stage of trial requiring the defendant's presence), *cert. denied*, 280 Md. 734 (1977); *State v. Tumminello*, 16 Md.App. 421, 436–37, 298 A.2d 202 (1972) (holding that a bench conference concerning the admissibility of evidence was not a stage of the trial at which the defendant had a right to be present, even though facts were discussed).

We know of no case from the Court of Appeals or this Court holding that the question of whether a particular event is a "stage of trial" is answered differently under the Maryland Declaration of Rights or common law than under the federal Constitution. Neither, for that matter, do the cases interpreting Maryland Rule 4–231(b)(1) (or its predecessor rules) suggest a broader interpretation of the right to be present for "a conference or argument on a question of law" than is given to the common law or constitutional rights. Moreover, because the rule does not define what constitutes a "conference or argument on a question of law," we look to case law for the answer. *See* Md. Rule 4–231 Committee Note (noting that, "[e]xcept when specifically covered by this Rule, the matter of presence of the defendant during any stage of the proceedings is left to case law, and the Rule is not intended to exhaust all situations"). We therefore determine whether appellant was entitled to be present for the discussion of Phillips's testimony by resort to the test developed in *Snyder* and *Stincer* and applied in the Maryland cases.

### C. This case

■ The trial court determined that the discussion concerning whether the State would be permitted to call Phillips in its case-in-chief was a conference on a "question of law," at which appellant had no right to be present. The court's ruling was correct.

The conference covered two matters: (1) whether Phillips would be allowed to testify in light of the defense's objection that his identity as a witness came too late; and—once the court ruled that Phillips would be permitted to testify—(2) the extent to which he could be impeached by prior convictions. No testimony was taken, "hence there was no involvement of the appellant's right to confrontation and to assist in cross-examination." *Brown,* 272 Md. at 476, 325 A.2d 557. Further, appellant cites no authority, and we know of none, that entitles him to "confront" the State's proffer of either the circumstances under which it learned of Phillips or what he would be expected to say about his conversation with appellant. We conclude, therefore, that appellant's presence was not required to vindicate his Sixth Amendment right of confrontation.

■ Neither did the exclusion of appellant from the conference violate due process. Appellant argues that he was entitled to be present because factual matter, and not merely law, was discussed. He asserts that, had he been present, he could have assisted his counsel by countering the State's proffer of what occurred between him and Phillips. To be sure, the State's proffer included facts about Phillips's expected testimony. Contrary to appellant's contention, however, this does not alter the nature of the conference as one involving a question of law.

We note, preliminarily, that both the crime scene view in *Snyder* and the competency hearing in *Stincer* had some factual content. Yet, in neither instance was this determinative of the issue. Moreover, we recognized in *Tumminello* that there are times when a ruling on the admissibility of evidence "necessarily involve[s] some factual discussions." 16

Md.App. at 436, 298 A.2d 202. As we said in that case, "it is difficult to conceive that [the] issue could be discussed in a vacuum without some reference to the facts of the particular case involved." *Id.* at 436–37, 298 A.2d 202.

The conference at issue in the case *sub judice* initially involved the question of whether the State had violated discovery. Certainly the trial court's decision on this question entailed its knowing the circumstances under which the State came to learn about Phillips and appellant's purported confession to him. As the court said, "The witness is not here, not going to be testifying and I am making a decision based upon a proffer of what a witness might say as to whether or not they should be permitted to produce this witness and call the witness or not."

The trial court did not expressly find that the State had violated discovery by choosing to inform the defense by letter, rather than orally, of Phillips's existence as a possible witness for the State. The court nevertheless must have concluded that, for whatever reason, the defense did not know about Phillips until the eve of trial. The court therefore had to consider the appropriate remedy to afford appellant a fair trial. It was quite reasonable and appropriate for the court, in doing so, to ascertain what Phillips's testimony would be.

We cannot conceive of how appellant's presence would have assisted his counsel in argument on this discovery matter. Indeed, even had appellant been present and countered the facts contained in the State's proffer, that would have had no bearing on the legal question the court had to decide at the conference, *i.e.*, whether the State should be permitted to call Phillips as a witness.

In sum, the matters discussed at the conference bore no "reasonable and substantial relationship to the opportunity of the [defendant] to defend," *Stincer*, 482 U.S. at 730, 107 S.Ct. 2658; appellant could not have assisted in the decision making, *Snyder*, 291 U.S. at 105–08, 54 S.Ct. 330; and he would have gained virtually nothing by being present at the discussion, *Brown*, 272 Md. at 477, 325 A.2d 557. We hold therefore that

the conference at which the court and counsel discussed appellant's objection to Phillips's testifying in the State's case-in-chief was a conference on a question of law, at which appellant had no entitlement to be present. It follows that the trial court did not err when it denied appellant's request that he be present at that conference.

## II.

Appellant next takes issue with the trial court's handling of a matter that arose when, at the close of the State's case, none of appellant's witnesses was immediately available to testify. He directs us to the court's requiring at that time, and again thereafter, a proffer of what the testimony of the witnesses would be, and then deciding, based on the proffers, that two of these witnesses would not be permitted to testify. Appellant contends that the court's actions violated his fundamental right to present a defense. We disagree.

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." Article 21 of the Maryland Declaration of Rights establishes a similar right in the context of State criminal proceedings. *Wilson v. State,* 345 Md. 437, 445, 693 A.2d 344 (1997).

The *Wilson* Court quoted the Supreme Court's decision in *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), for the proposition that " '[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.' " 345 Md. at 447, 693 A.2d 344. The law recognizes, however, that "[t]he right of compulsory process, under both the Federal and State Constitutions, though fundamental, is not absolute." *Id.* at 448, 693 A.2d 344. A defendant does not have an " 'unfettered right to offer testi-

mony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.' " *Id.* (quoting *Taylor v. Illinois,* 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988)). Consequently, the right of compulsory process "is not violated if a court declines to subpoena, grant a continuance to locate, or otherwise assist in the apprehension or production of a missing witness" absent a showing that the witness's testimony is both admissible and helpful to the defense. *Id.*

As we shall explain, appellant was not deprived of the right to present his defense.

## A. The developing contention

As we have mentioned, none of appellant's witnesses was present in the courtroom when the State concluded its case-in-chief. And only one of them was available by pager to come to court to testify. The trial court noted at the outset of the discussion that it had specifically enjoined both parties to have their witnesses available in advance of when they might be needed, to avoid delaying the trial. Nevertheless, the court entertained the defense's explanation for why the witnesses were not present.

One of the unavailable witnesses was Officer Wells. The defense conceded that the officer had not been served with a subpoena.[5] The court asked what testimony the defense hoped to secure from this witness. Counsel replied that she would question Officer Wells about the extent to which he or other officers had "followed up" on his interviews of uninvolved eyewitnesses to the shooting. The court pointed out that this testimony would be hearsay unless the persons interviewed were available to testify. The court also noted that anything Officer Wells might say about inadequacies in his role or other officers' roles in the investigation was irrelevant, because he was not the lead investigator.

---

**5.** Defense counsel explained that she had obtained a subpoena for Officer Wells, but the process server was unsuccessful in his attempt to serve it.

Following this, the court took a brief recess. When the proceedings resumed, counsel advised the court that one of the witnesses, Officer Patel, had arrived. At the State's suggestion, the court asked the defense to proffer Officer Patel's testimony. Counsel responded that she did not know precisely what the officer's testimony would be, but her questions would be directed at ascertaining the bus schedule and route, and the bus driver's inability to corroborate the altercation between appellant and the victims.

To this the court responded that nothing proffered "would be admissible through [Officer] Patel," because his expected testimony would be either inadmissible hearsay or irrelevant. The court decided to release Officer Patel. The court, however, allowed the defense until the following morning to summons Officer Wells to court.

Upon reconvening the next morning, the court inquired if appellant was able to secure Officer Wells's attendance. The court confirmed that the officer had not been subpoenaed before trial and that the defense could not secure his attendance that day. The record does not reflect that appellant asked for a continuance or that the State be compelled to produce Officer Wells. Even so, the court said: "[U]nder the circumstances, I am not going to require the State to produce him, and I am not going to delay the trial to bring him down here, particularly in light of the Court's determination that based upon the proffer, nothing he has to say would be admissible."

After discussion on other matters, the defense advised the court that a "civilian" witness, Ms. Blizzer, was now in court and prepared to testify. Again the court asked for a proffer of the witness's testimony. Defense counsel objected to this, but nevertheless responded that Ms. Blizzer would testify from personal knowledge that one of the victims, Nicholas Watson, frequented the area where the shooting occurred and was known for "being raucous and hooting at people." Counsel explained that this testimony would rebut Watson's testimony concerning his good reputation in the community.

The court recognized that Watson's character trait for truthfulness was at issue because he testified, but noted that Ms. Blizzer's proffered testimony would not address that character trait. Instead, the proffered testimony was directed at impeachment of Watson on a collateral issue. The court also pointed out that Watson's statement about his good character in the community came only in response to appellant's cross-examination of him. Defense counsel added that Ms. Blizzer's testimony was relevant because it suggested that people other than appellant might have known that Watson had a habit of standing on the corner where the shooting occurred, "do[ing] whatever he does." Concluding that none of her testimony was relevant, the court ruled that she would not be allowed to testify.

## B. The trial court's decisions

 This is not a case in which appellant was deprived of his right to present a defense. Appellant has cited no authority suggesting that the court acted improperly, under the circumstances of this case, by requiring proffers of what the defense witnesses might say and then ruling on the admissibility of their testimony. Certainly we know of none. Rather, the court's actions fall squarely within its broad discretion to control the trial.

 The Court of Appeals has recently reiterated that " '[t]he conduct of the trial must of necessity rest largely in the control and discretion of the presiding judge.' " *Cooley v. State,* 385 Md. 165, 176, 867 A.2d 1065 (2005) (quoting *Wilhelm v. State,* 272 Md. 404, 413, 326 A.2d 707 (1974)). The Court has also recognized that "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. A defendant's interest in presenting such evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Pantazes v. State,* 376 Md. 661, 681, 831 A.2d 432 (2003) (quoting *United States v. Scheffer,* 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (internal quotation marks omitted)). The appellate courts are not to interfere with the court's handling of the trial

proceedings "unless there has been an abuse of discretion by the trial judge of a character likely to have injured the complaining party." *Cooley,* 385 Md. at 176, 867 A.2d 1065.

As we consider appellant's first complaint—the court's requiring proffers of the witnesses' expected testimony—we take into account the following. The court admonished all counsel at the outset of this four-day trial to be certain to have their witnesses available so the trial could proceed without undue delay, yet appellant had none of his witnesses immediately available at the close of the State's case. Appellant had not summonsed one of the police witnesses, Officer Wells, to testify. Even so, the court recessed for the day and allowed appellant an evening to resolve all of the outstanding witness issues. Appellant did not formally or informally seek a continuance or other relief. And, the proffers prevented the delay that would attend appellant's presenting witnesses whose testimony would be entirely inadmissible.

These considerations lead us to conclude that the court did not abuse its discretion by ascertaining, through proffer, the purpose for which the defense sought to have the witnesses testify. In a similar context, the courts have made it clear that requesting a proffer is helpful, even necessary, to a proper ruling. *Wilson,* 345 Md. at 448, 693 A.2d 344 (stating that a defendant cannot make out a violation of the right to compulsory process unless he has first made at least a " 'plausible showing of how [the] testimony would have been both material and favorable to his defense' ") (quoting *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982)).

We are also unpersuaded by appellant's argument that the court erred in denying him the right to call the two witnesses who were present, Officer Patel and Ms. Blizzer, based on the proffers of their expected testimony.[6] Much of

---

6. To the extent that appellant's argument could be read to include the contention that the court erred in not allowing appellant additional time to secure the attendance of Officer Wells, we reject the argument,

Officer Patel's testimony would have been hearsay, a point defense counsel herself acknowledged. The court deemed the remainder to be irrelevant. We generally defer to the trial court's rulings on the admissibility of evidence, including determinations of relevance, and we do not disturb such rulings in the absence of an abuse of discretion. *See Merzbacher v. State,* 346 Md. 391, 404–05, 697 A.2d 432 (1997); *Behrel v. State,* 151 Md.App. 64, 126, 823 A.2d 696, *cert. denied,* 376 Md. 546, 831 A.2d 5 (2003). In neither aspect of this evidentiary ruling did the court abuse its discretion. It follows that the court did not abuse its discretion in declining to allow Officer Patel to testify.

We come to the same conclusion about Ms. Blizzer. The court ruled that she would not be permitted to testify only after it became clear that she would be called to discuss a collateral matter, *i.e.,* Watson's character for good conduct. This was an area into which appellant was not automatically entitled to venture. *See* Md. Rule 5-616(b)(2) ("[E]xtrinsic evidence contradicting a witness's testimony ordinarily may be admitted only on non-collateral matters[.]"). Moreover, it was appellant who introduced the subject of Watson's character by asking him on cross-examination if he was known to be a "bully." The court acted within its discretion when it disallowed Ms. Blizzer's testimony.

### III.

Appellant raises two arguments related to the taking of the verdict. He argues that the court erred, first, by denying his timely request that the jury be polled and, second, by accept-

---

for several reasons. First, as we have mentioned, the record does not reflect a request by appellant for a continuance. Second, appellant did not subpoena Officer Wells before trial. Third, appellant's proffer of the officer's testimony demonstrated that it would have been inadmissible on hearsay and relevancy grounds, and so would not have helped appellant in any event. *See Wilson,* 345 Md. at 448–49, 693 A.2d 344 (stating that a defendant is not entitled to the court's assistance to obtain a missing witness unless the defendant has made diligent efforts to secure the witness's presence, and can show "that the testimony of the witness would be both admissible and helpful to the defense").

ing the jury's verdict of "guilty" on two of the counts after the jury initially returned a verdict of "not guilty" on those counts. The record does not support either contention.

## A. The trial proceedings

Our disposition of both of appellant's contentions requires that we examine what occurred before and when the verdict was received. Appellant was charged, *inter alia,* with two counts of attempted first degree murder based on the State's allegation that he had shot Ibrahim Sidibe and Nicholas Watson. Before jury instructions, the court discussed the verdict sheet with counsel. The court pointed out that the charges of attempted first degree murder include the lesser included offenses of attempted second degree murder. Without objection from defense counsel, the court decided to organize the verdict sheet, on each of the charges of attempted murder, as follows:

I. On the charge of Attempted Murder of Ibrahim Sidibe, we find the Defendant:

A.) Attempted Second Degree Murder:

Guilty _____ Not Guilty _____

B.) Attempted First Degree Murder:

Guilty _____ Not Guilty _____

\* \* \*

IV. On the charge of Attempted Murder of Nicholas Watson, we find the Defendant:

A.) Attempted Second Degree Murder:

Guilty _____ Not Guilty _____

B.) Attempted First Degree Murder:

Guilty _____ Not Guilty _____

During its instructions, the court advised the jury that appellant was charged with, among other things, attempted first degree murder. The court explained that the charge in fact included two charges, the greater offense of attempted first degree murder and the lesser included offense of at-

tempted second degree murder. The court instructed the jury that, in order to find appellant guilty of the greater offense, it would have to find that appellant acted with premeditation and deliberation. The court further instructed the jury that it would receive a verdict sheet reflecting these concepts.

Before the jury retired to deliberate, the court explained the verdict sheet, saying:

I have had, as I indicated, prepared a verdict sheet that lists out the six counts for you, and the first one listed in the order in which they were originally read to you is the attempted murder of Ibrahim Sidibe.

Now, I put under here attempted second-degree murder and attempted first-degree murder. As you have had described to you during the course of the instructions, the distinction between the two is that with attempted first-degree murder, you have the additional presence of premeditation and deliberation. So in addressing that count, what I would ask you to do is first consider the issue of whether the elements of second-degree murder are met, and if they are, then go on to consider whether the additional element of first-degree murder or attempted first-degree murder, I should say, is met.

If you find that all elements of attempted first-degree murder are met, then you would, in effect, return verdicts as to both A and B. First you would find it was second-degree, and then you would find the additional element was met, so you would answer guilty as to both.

Alternatively, if you found that he was not guilty of second-degree murder, you wouldn't go on to consider first-degree because it is a lesser-included offense.

The jury retired to deliberate, and, after some time, returned to the courtroom to deliver its verdict. The following took place:

THE CLERK: Members of the jury, have you agreed upon your verdict?

THE JURY: We have.

THE CLERK: Who shall say for you?

THE FORELADY: I will.

THE CLERK: Madam Foreperson, please stand. On the charge of Attempted Murder of Ibrahim Sidibe, how do you find the defendant as to second degree murder?

THE FORELADY: Not guilty.

THE CLERK: On the charge of First Degree Assault on Ibrahim Sidibe, you find the defendant?

THE FORELADY: I'm sorry; could you repeat that?

THE CLERK: On the charge of First Degree Assault on Ibrahim Sidibe, you find the defendant?

THE FORELADY: Guilty.

THE CLERK: On the charge of Use of a Handgun in a Crime of Violence relating to Ibrahim Sidibe, you find the defendant?

THE FORELADY: Guilty.

THE CLERK: On the charge of Attempted Murder of Nicholas Watson, you find the defendant?

THE FORELADY: Guilty.

THE CLERK: Excuse me. That is Attempted Second Degree Murder. Let me read that again. I apologize.

THE FORELADY: You are not reading the whole thing.

THE CLERK: I apologize.

THE COURT: But what he is doing is with respect to the counts as to the Attempted Murder of Mr. Sidibe and/or Mr. Watson. What he is asking first is the issue as to second degree—

THE FORELADY: Right.

THE COURT:—because we advised you to answer that question first and then first degree. So do you want him to go back and ask the first question again?

THE FORELADY: Yes.

THE COURT: Okay. So let's go back to the first question again, and he is just asking it in two parts because that is the way we asked you to approach it.

THE FORELADY: Yes.

[THE STATE]: Could we approach the bench, Your Honor?

THE COURT: Okay. [To the jury] Have a seat for a second.

At the bench, the following was said:

[THE STATE]: It is very clear to me that what they have done is they found him guilty of Attempted First Degree because she is standing there waiting to say that.

THE COURT: I don't think that is what has happened. I think that she—

[THE STATE]: There is no question.

THE COURT: But I think that she has messed up the verdict because I saw Juror No. 3 shaking her head no and Juror No. 4 looked surprised when they said as to Count 1. So I think that she is confused as to the way they have read it, but we will find out.

We will go back and voir dire them, and I ultimately will look at the verdict sheet before we hearken the jury, but I am not going to look at it until we have gone through each of the questions.

The bench conference concluded and the clerk retook the verdict, beginning with count 1.

THE CLERK: I will start beginning with Count 1. On the charge of Attempted Murder of Ibrahim Sidibe, you find the defendant (A) Attempted Second Degree Murder?

THE FORELADY: Not Guilty.

THE CLERK: (B) Attempted First Degree Murder?

THE FORELADY: Guilty.

THE CLERK: On the charge of Attempted Murder of Nicholas Watson, you find the defendant (A) Attempted Second Degree Murder?

THE FORELADY: Not guilty.

THE CLERK: (B) Attempted First Degree Murder?

THE FORELADY: Guilty.

THE CLERK: On the charge of First Degree Assault of Nicholas Watson, you find the defendant?

THE FORELADY: Guilty.

THE CLERK: On the charge of Use of a Handgun in a Crime of Violence Relating to Nicholas Watson, you find the defendant?

THE FORELADY: Guilty.

THE COURT: Can I see the verdict sheet, please. You can have a seat back over there for a second. [To counsel:] Come on up.

The parties came to the bench and the following ensued:

THE COURT: As to the second degree, it [the verdict sheet] is blank, and it is inconsistent with the instructions that I gave them, so I think what I have to do is instruct them that, you know, they could not find him guilty of Attempted Murder in the First Degree if he were not guilty of Attempted Murder in the Second Degree because it is a necessary lesser included.

It has not been hearkened or the jury has not been polled, so it is not final.

[DEFENSE COUNSEL]: Could I ask you to hearken—actually poll, I guess.

THE COURT: No.

[THE STATE]: No, you can't do that.

THE COURT: *The verdict on its face is inconsistent. I mean, she has announced—and this doesn't even reflect what she has announced—this is blank, and she has announced not guilty herself, okay? As to the second degree.*

I think what I should do is as to the first and fourth counts remind them that I instructed them that only if you found him guilty of attempted second degree murder would you then proceed to consider first, so that a verdict of not guilty as to second degree murder would be inconsistent with the Court's instructions and that if in fact their verdict was guilty as to second degree murder, then we need to have that indicated on the verdict sheet and have them return to the jury room to further deliberate.

[THE STATE]: Right.

[THE STATE]: Right, okay.

[DEFENSE COUNSEL]: Well, basically, you are telling them to go back and find him guilty of second degree murder.

[THE STATE]: No.

[DEFENSE COUNSEL]: May I? I want to make a court record. First of all, right now I am going to ask for a mistrial. Secondly, I object to you sending them back and instructing them, which is what you are doing, that they have to go back and find him guilty of second degree murder in order to make their other verdicts consistent because 1 think that is what you are doing.

She already announced—she already announced that he is not guilty of second degree murder, and basically your instruction is that you have to go back and you have to check off the box that he is guilty of second degree murder.

I think that is inappropriate.

THE COURT: Okay. First of all, I think that is a gross overstatement of what I said I would instruct them to do.

What I would instruct them is remind them that I told them that they could not proceed or should not proceed to consider the issue of whether he was guilty of first degree murder until they had first decided whether he was guilty of second degree murder, and that if in fact they determined that he is not guilty of second degree murder, they would not even proceed to consider first degree murder.

Now is there anything about that statement that is wrong as a matter of law?

[THE STATE]: No, there is nothing wrong with the statement as a matter of law, Your Honor.

THE COURT: Okay. So then all I am doing is advising them of what is a correct statement of the law and reminding them of the instruction.

For one, the verdict sheet does not reflect what she said, so that needs to be corrected in the first instance, and I don't think that I am coercing them to do one thing or the other.

I mean, quite frankly, I do think it is pretty clear from the verdicts that they recorded—or from the verdict that she announced that the jury has concluded he is guilty of attempted second degree murder because it is a lesser included of the offenses that he is guilty of, but if they didn't, then he would not—be not guilty of first degree murder.

The defense reargued, unsuccessfully, that the jury should not re-deliberate on the inconsistent verdict, because it already had been announced. The court again pointed out that, when the foreperson announced the verdict, "two or three of the other jurors started shaking their heads no." Discussion then turned to what the court should say to the jury. Following that, the bench conference concluded and the court instructed the jury:

THE COURT: Okay. Ladies and gentlemen, there is some confusion with respect to the verdict sheet that we need to clear up, and what I am going to do is remind you of that portion of the instructions that I gave you when we talked about the counts of attempted murder, and what I have instructed you is that attempted second degree murder is a necessary lesser included of attempted first degree murder.

Attempted first degree murder has that additional element of premeditation and deliberation so that if in fact you conclude that he is not guilty of attempted second degree murder, you wouldn't even reach the issue of whether he is guilty of attempted first degree murder.

In addition to that, although the forelady announced that the jury's decision had been not guilty as to attempted second degree murder, neither box is checked on the verdict sheet and so we need to have that clarified, and certainly I would remind you that your verdict must be unanimous with respect to that count; okay?

So with that having been said, let me ask you to take the verdict sheet back, retire to the jury room, take as long as you need, and we will await further word from you.

The jury retired to the jury room to continue its deliberations. A brief discussion ensued among counsel and the court concerning whether the jury should be given a new, completely blank verdict sheet, as the defense requested. Before that issue could be resolved, the jury concluded its deliberations and returned to the courtroom.

As pronounced by the foreperson, the verdict on all counts, including attempted second degree murder and attempted first degree murder, was "guilty." The jury was polled and expressed its unanimous agreement with the verdict. The court, upon hearing from both parties that a hearkening was unnecessary, said: "Then, ladies and gentlemen, the jury having been polled, that will constitute the formal rendering of your verdict here in open court." The court thanked the jury for its service and discharged it.

### B. Appellant's request for polling

Appellant argues that the court committed reversible error when it denied his request that the jury be polled before the court sent the jury back for further deliberations. He contends, first, that the verdict, by then, was "final" because the foreperson had announced a verdict on each of the six counts before the jury. From this premise, he argues that the court had to accede to his request for polling at that time. We do not agree with either prong of this argument.

A defendant is entitled to have the jury polled to assure himself that the verdict reflects the decision of each and every juror. *Harris v. State*, 160 Md.App. 78, 100, 862 A.2d 516 (2004). Maryland Rule 4–327 addresses the right to a poll of the jury and provides, in pertinent part:

(a) **Return.** The verdict of a jury shall be unanimous and shall be returned in open court.

\* \* \*

(e) **Poll of jury.** On request of a party or on the court's own initiative, the jury shall be polled after it has returned a verdict and before it is discharged. If the jurors do not

unanimously concur in the verdict, the court may direct the jury to retire for further deliberation, or may discharge the jury if satisfied that a unanimous verdict cannot be reached.

The rule thus establishes that the time for polling the jury is after the verdict has been returned and before the jury is discharged. But, "neither hearkening nor polling cures a verdict that is defective when it is hearkened or polled in its defective form." *Smith v. State,* 299 Md. 158, 169, 472 A.2d 988 (1984). Therefore, when a jury's verdict " 'is ambiguous, inconsistent, unresponsive, or otherwise defective,' " the trial court has a duty to call the defect to the jurors' attention and " 'to direct them to put the verdict in proper form either in the presence of the court or by returning to their consultation room for the purpose of further deliberation.' " *Lattisaw v. State,* 329 Md. 339, 345, 619 A.2d 548 (1993) (quoting *Heinze v. State,* 184 Md. 613, 617, 42 A.2d 128 (1945)). Indeed, "[u]ntil the case is removed from the jury's province the verdict may be altered or withdrawn by the jurors, or by the dissent or non-concurrence of any one of them." *Smith,* 299 Md. at 168, 472 A.2d 988.

In the present case, the trial court heard the foreperson's initial announcement of the verdict; saw the other jurors' reaction to the first verdict; and observed that, contrary to the court's instructions, the jury had left blank the line on the verdict sheet where it was to indicate its verdicts on the lesser included charges of attempted second degree murder. The court declined appellant's request for an immediate poll of the jury and decided, instead, that the jury should be returned to its deliberations to clear up the confusion.

The court carefully re-instructed the jurors before sending them to their deliberations. The court advised the jurors that "there is some confusion with respect to the verdict sheet that we need to clear up," and reminded them of the court's instructions that, if they found appellant not guilty on attempted second degree murder, they should not "even reach the issue of attempted first degree murder." The court instructed the jurors to clarify their verdict on the attempted second

degree murder count by marking the verdict sheet. The court also informed the jurors, once again, that their verdict "must be unanimous with respect to that count."

The jury re-entered the courtroom with its verdict shortly thereafter. The foreperson announced the verdict of guilty to all counts. The verdict sheet reflected that verdict. The jury was then polled, and each juror agreed that the verdict as announced by the foreperson represented that juror's decision. Then, and only then (the court and the parties having agreed that hearkening was unnecessary) was the verdict final. *See Johnson v. State*, 325 Md. 511, 516, 601 A.2d 1093 (1992); *Hoffert v. State*, 319 Md. 377, 386, 572 A.2d 536 (1990); *see also Jones v. State*, 384 Md. 669, 682–84, 866 A.2d 151 (2005) (discussing that the " 'return' of a verdict" is "comprised of three distinct procedures, each fulfilling a specific purpose," namely (1) the foreperson's answering the inquiry of the clerk and stating the jury's verdict to the court; (2) the polling of the jury, if requested, to ascertain the unanimity of the jury's verdict; and (3) the hearkening of the jury to the verdict, to announce formally the recording of the verdict).

The court was not required to have the jury polled until the court was confident that the verdict was not "ambiguous, inconsistent, unresponsive, or otherwise defective[.]" *Lattisaw*, 329 Md. at 345, 619 A.2d 548; *see Bates v. State*, 127 Md.App. 678, 700, 736 A.2d 407, *cert. denied*, 356 Md. 635, 741 A.2d 1095 (1999); *Rice v. State*, 124 Md.App. 218, 224–25, 720 A.2d 1287 (1998), *cert. denied*, 353 Md. 270, 725 A.2d 1068 (1999). It was clear to the court that the verdict the foreperson announced was at the least ambiguous and, given the reaction of other jurors, likely not an accurate reflection of what the jury had decided. We find no error in the court's decision to return the jury to its deliberations to clarify its verdict and the verdict sheet. Indeed, it was the safe and proper thing to do. *See Lattisaw*, 329 Md. at 347, 619 A.2d 548 (observing that the "safest" course of action to resolve an ambiguous verdict is "to send the jury out for further deliberations in accordance with Maryland Rule 4–327(e) . . . with the simple instruction that their verdict be unanimous").

Once the jury clarified its verdict, and announced it, appellant received that to which he was entitled under the case law and Maryland Rule 4–327: a polling of the jury after it returned its verdict and before it was discharged.

### C. The Final Verdict

Appellant's last argument, that the court erred by accepting a "legally inconsistent verdict," depends on a premise we have rejected, that the jury's verdict became "final" when first announced by the foreperson. We have explained why the verdict was not final at that time, and why the court properly sent the jury back to its deliberations to rectify what amounted to a defective verdict on the counts charging attempted first and second degree murder.

The jury's verdict finding appellant guilty on all charges, confirmed by the poll, was the final verdict. *See Johnson*, 325 Md. at 516, 601 A.2d 1093; *Hoffert*, 319 Md. at 386, 572 A.2d 536. That verdict was neither factually nor "legally" inconsistent. There is no cause for it to be disturbed.

**JUDGMENTS AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**