898 A.2d 419

**Francesco A. KELLY**

v.

**STATE of Maryland.**

**No. 49, Sept. Term, 2005.**

Court of Appeals of Maryland.

May 8, 2006.

512

**514**

Nancy S. Forster, Public Defender, Baltimore, for petitioner.

Gregory D'Alesandro, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, Baltimore), on brief, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, J.

Francesco Alexjandre Kelly, petitioner, was convicted by a jury in the Circuit Court for Montgomery County on May 22, 2003, of two counts each of attempted first degree murder,[1] attempted second degree murder,[2] first degree assault,[3] and use of a handgun in the commission of a felony or a crime of violence.[4] He was sentenced to twenty-five years for the first

---

1. Md.Code (2002), § 2–205 of the Criminal Law Article.

2. Md.Code (2002), § 2–206 of the Criminal Law Article.

3. Md.Code (2002), § 3–202 of the Criminal Law Article.

4. Maryland Code (1957, 1996 Repl.Vol., 2001 Supp.), Article 27 § 36B, was codified as Maryland Code (2002), § 4–204 of the Criminal Law Article effective October 1, 2002. Although the sentencing sheet and charging documents reference Article 27 § 36B, section 4–204 was in effect at the time of the offense. Because the two sections are substan-

count of attempted first degree murder, a consecutive ten years for the second count of attempted first degree murder, and a consecutive five years for the first count of use of a handgun in the commission of a felony or a crime of violence (to run concurrently with five years for the second count of use of a handgun in the commission of a felony or a crime of violence), for a total of forty years imprisonment.[5]

The Court of Special Appeals affirmed the convictions. *Kelly v. State*, 162 Md.App. 122, 873 A.2d 434 (2005). Petitioner filed a petition for writ of certiorari on June 15, 2005. We granted certiorari on August 10, 2005. *Kelly v. State*, 388 Md. 404, 879 A.2d 1086 (2005). The following questions are presented for our review:

"I. Whether the right to be present at every stage is violated by exclusion of the defendant from an evidentiary hearing when, although evidence is not taken in the traditional sense, the court's ruling is based on the State's proffer[6] of facts not previously in evidence

---

tially identical the reference to Article 27 does not have any effect in these proceedings.

5. The attempted second degree murder and attempted first degree assault convictions were merged with the attempted first degree murder as lesser included offenses for the purpose of sentencing.

6. Although we are not addressing this question, we will—for the purpose of clarity—explain the state's proffer as it is relevant to the answer of the first question presented in order that the proffer there made can be distinguished from the court imposed proffers that are the subject of the second question. According to the State, a letter was mailed to petitioner's counsel 11 days before the trial was set to begin. The letter purportedly stated that the State intended to call as a witness, a "jailhouse snitch," who had come forward a couple of days earlier with information regarding petitioner's confession. At the time the trial commenced, petitioner's counsel objected to the testimony of the snitch because she had not received the notification of the State's intention to call that witness and believed such lack of notice constituted a discovery violation. At that time the court postponed ruling on the objection until the State actually called the witness. During trial, when the State informed the court of its intention to call that witness, the court discussed with the State and petitioner's counsel, out of the presence of the jury and in the absence of the petitioner (over petitioner's counsel's objection), whether the witness would be allowed to testify. The State

and, thus, the proceeding is not a conference or argument on a question of law?

"II. Whether the right to present a defense is violated when the court, without justification, and as a predicate to permitting an available witness to take the stand, requires the defense to proffer, in the State's presence, the content and theory of admissibility of the witness's testimony?"

We hold that the trial court abused its discretion when it refused to allow the petitioner to present his witnesses. Because the answer to the second question requires that petitioner be granted a new trial, we shall not address the first question presented.

## I. Facts

The Court of Special Appeals provided the following account of the events that led to these proceedings:

"The tragic events of this case began to unfold around 11:00 p.m. on October 31, 2002. At that time, Ibrahim Sidibe, his fiancee, Melissa Wainwright, and Sidibe's best friend, Nicholas Watson, were riding together on a public transit bus. They were on their way home from City Place Mall, in Silver Spring, Maryland, where Sidibe had been performing as the character Spiderman at a children's Halloween party.

"During the bus ride, Wainwright noticed [petitioner] seated across from them, wearing headphones and 'bobbing his head up and down,' evidently in time with the music. Wainwright made a remark about [petitioner] that caused

---

made a proffer stating that the witness would testify as to the statements made by the petitioner to the witness confessing to the crime. No objections were raised as to the admissibility of the witness's testimony on evidentiary grounds but only on the fact that the State had not provided adequate notice to petitioner's counsel. The court found that there had not been a discovery violation and allowed the witness to testify.

The proffers issues raised in the second question above all arose subsequent to, and completely independent of, the proffer issue encompassed in the first question.

Watson and others on the bus to laugh. [Petitioner] responded with a derogatory comment about Wainwright, precipitating an angry exchange between Watson and [petitioner]. The episode ended within a minute and a half, without further trouble at that time.

"Shortly thereafter, Sidibe, Wainwright, and Watson got off the bus at the stop in front of a 7–Eleven Store in the White Oak area of Silver Spring. [Petitioner] remained on the bus, but he and Watson made 'eye contact' as Watson left the bus.

"The three friends went into the 7–Eleven to get something to eat and drink, then returned to the bus stop to await the arrival of the next bus. Sidibe was wearing his headphones and stood about 12 to 15 feet away from Watson and Wainwright. After ten minutes or so, Wainwright and Watson heard a gun shot.

"Wainwright, who was six months pregnant at the time, turned and recognized the shooter as the person about whom she had made the comment on the bus. She took off running in the direction of the 7–Eleven, hearing additional gun shots as she ran. Wainwright fell twice in her efforts to get to the store, but was able to reach it and get inside without being injured.

"Watson did not immediately flee upon hearing the gun shot. Instead, he turned in the direction of Sidibe in time to see him fall to the ground. Watson saw a 'shadowy figure' standing above Sidibe and pointing a gun directly at Sidibe. The figure lifted his head and pointed the weapon at Watson. Watson saw that it was 'the kid from the bus,' *i.e.,* [petitioner].

"Watson took off running toward the 7–Eleven. [Petitioner] fired at Watson as he ran, shooting him six times, once each in the arm, the back of his head, the right buttock, the right middle finger, the shoulder, and the chest. Watson was able to reach the store, and urged the store clerk to call the police or an ambulance. The police and emergency medical personnel arrived shortly thereafter.

"Watson and Wainwright described the shooter to the police. The description was broadcasted to officers in the area. Shortly thereafter, the police stopped [petitioner] at a location about a mile from the scene of the shooting. The police transported Wainwright to that location for a show-up. Wainwright identified [petitioner] as the shooter. [Petitioner] was then arrested and taken to the police station.

"At the hospital several hours after the shooting and after emerging from surgery, Watson was shown a photographic array that included a photograph of [petitioner] taken earlier that night at the police station. Watson selected [petitioner]'s photograph as depicting the shooter.

"Sidibe, who was paralyzed as a result of the shooting, was able to testify about the events on the bus and before the shooting, but was unable to describe the shooter or testify in detail about the shooting itself. He did testify, however, that he had been shot in the forehead, and injured his neck when he fell to the ground.

"Both Watson and Wainwright identified [petitioner] at trial as the person who had been on the bus with them and later shot Watson and Sidibe."

*Kelly*, 162 Md.App. at 127–29, 873 A.2d at 436–37. During trial, the State presented, without the court requiring a prior proffer of each witness's testimony, testimony from twelve witnesses, one of whom testified through a videotaped deposition. At the close of the State's case, the court sent the jury on a fifteen minute recess. Petitioner then moved for judgment of acquittal and the court denied the motion. The court asked whether petitioner's witnesses were ready. Petitioner's counsel stated that she planned to call two witnesses. The first witness she had planned to call was Officer Patel, who had been subpoenaed and was somewhere in the building ready to be paged when needed. The second witness was Officer Wells, whom petitioner's counsel had unsuccessfully attempted to serve with a subpoena.

The State initially objected to Officer Patel as a witness only because the petitioner's counsel had not included the officer on

the witness list presented to the jury. The court stated that the witness list issue could be resolved after it was determined where the witnesses were. At that time, petitioner's counsel and the court discussed Officer Wells's testimony:

"[Petitioner's counsel]: . . . I really want to call Officer Wells and I want to call Officer Patel, but those are my two primary witnesses that I want to call for very specific reasons.

. . .

THE COURT: Do you know anything about Wells, whether he is or—

[State]: No.

THE COURT:—isn't available?

[State]: No. He is not someone that, from my understanding, has any—

THE COURT: What does Wells—

[State]:—direct bearing.

THE COURT:—proffer to me what his . . .

[Petitioner's counsel]: He responded to the scene of the crime and did a number of interviews with other eyewitnesses.

THE COURT: Who have testified?

[State]: No.

[Petitioner's counsel]: Well, I have his notes—

THE COURT: But I am asking you—

[Petitioner's counsel]:—I don't have witness statements signed by them. I have notes from his part of the investigation, saying who he talked to and what they said.

THE COURT: But how would that be admissible unless those persons are also available, because what they said would be hearsay wouldn't it?

[Petitioner's counsel]: Well, it would be hearsay, just like the description of my client is hearsay and came in all through the trial.

THE COURT: But does it recognize the exception—

[State]: That's right.

THE COURT:—as we have discussed with that?

[Petitioner's counsel]: Right, because they actually arrested him, but I think I am entitled to show that they had other information that they didn't follow up on, particularly since some of it would refute the validity of the description given that led to my client.

THE COURT: But, one, that would assume that Wells did or didn't follow up on it; and two, it would assume that Wells didn't give the information to anybody else and that nobody else followed up on it and that Wells would know whether or not somebody else did or didn't follow up on it. He is not the lead investigator.

[Petitioner's counsel]: No, and the lead investigator said he didn't follow up on anything. So we know that.

[State]: That is not true.

[Petitioner's counsel]: He said he didn't follow up on any other witness information, is what he said."

The court then gave petitioner's counsel the remainder of the recess to determine the status of the witnesses.[7] When the court reconvened, Officer Patel was present and was told to wait outside of the courtroom to be called. Petitioner waived his right to testify and prepared to call Officer Patel. Before the jury was called back into the courtroom, however, the following discussion, part of which is at the heart of this appeal, took place:

---

7. When the State's case ended, the court sent the jury on a fifteen minute recess. After the jury left the courtroom the court discussed a number of issues with the parties before asking petitioner's counsel if her witnesses were ready. The court then gave petitioner's counsel seven minutes (the time remaining before the jury was due back in the courtroom) to determine the location and status of the witnesses. When the parties returned, Officer Patel was present in the courtroom. It is difficult to conceive that a seven minute delay in the proceedings, which in fact was no delay at all because the jury was not due back until then, constituted such a burden upon the court to say, as the State contends, that the court could require a detailed proffer of the witnesses' testimony. Furthermore, it is clear from the record that the delay was not a reason for the court's decision to exclude the witnesses.

**522**

"THE COURT: ... Okay. Are we ready for the jury?

[Petitioner's counsel]: Yes, Your Honor.

THE COURT: Because you have at least Officer Patel.

[Petitioner's counsel]: Right.

[State]: Your Honor, I think it is important that we get, I think, a proffer as to what he is going—Officer Patel—is going to say because—

THE COURT: Okay. What is Officer Patel going to testify to?

[Petitioner's counsel]: Well, I don't know what he is going to testify to. I know what I am going to ask him.

THE COURT: What are you going to ask him[?]

[Petitioner's counsel]: He is the officer that went to find the bus driver of the alleged bus incident—

THE COURT: Okay.

[Petitioner's counsel]:—and determined that there was no corroboration of the altercation on the bus. The bus driver had no recollection of anybody involved, and there was one other thing that he can testify about based on at least the notes that I have received.

THE COURT: Well, he cannot testify to what the bus driver told him occurred—

[Petitioner's counsel]: Well, I think I can—

THE COURT:—or didn't occur.

[Petitioner's counsel]: Right. No, I know. I don't think the bus driver could either because he didn't have any recollection.

THE COURT: Yeah, but we could produce the bus driver to say he didn't have any recollection or that there was nothing unusual that night so far as he recalls—

[Petitioner's counsel]: That is right.

THE COURT:—Patel cannot testify as to what the bus driver told him about that. So what else is he going to add?

[Petitioner's counsel]: If Your Honor would just give me a second. Well, I certainly can ask him, Your Honor, what time the bus driver had been to the—or at least what bus he

tried to locate and what time that bus route would have run at that time, if he knows, because that has to do with impeaching their testimony about how long they had been standing there and those types of things.

THE COURT: But, again, how could he testify as to that because it is presumably what the driver told—

[Petitioner's counsel]: Well, no, because he went and sought out a specific bus driver based on the schedule of the bus.

THE COURT: Okay.

[Petitioner's counsel]: And so that would be based on a particular time that he was informed would have been the time that was likely that the people got off the bus. He only talked to one bus driver.

THE COURT: But I just don't understand the point.

[Petitioner's counsel]: Well, the point would be because the victims testified to very different times as to when they were standing there and not standing there, and throughout all of the State's case, I was trying to show—and I think I did—that there was a lot of inconsistencies, and I don't want there to be any confusion that these people were standing there for quite a long time, considering where it is, and that it is unlikely that somebody that didn't know them would know they would be standing there."

THE COURT: Well, there was reference already through the cross-examination of the various witnesses about the alleged victims and Ms. Wainwright having given various estimates of the time, and there is a lot of testimony already with respect to that.

So it sounds like Patel would only be testifying as to what some other persons told him was their synopsis or their summary of what they think was the time he should be concerned about, which, again, would be double hearsay.

[Petitioner's counsel]: Well, Your Honor, is the same as the description, though. I mean, they were relying on that—

THE COURT: There is an exception for the description.

[Petitioner's counsel]: Well, I understand that, Your Honor, but I don't understand why I cannot ask him was there a

particular time that the bus would have stopped there that he—I mean, he had to call the Metro place and say who would be driving the bus at this time; right? That is what he said. That is based in whatever information he received.

THE COURT: Right.

[Petitioner's counsel]:—and that is what I am trying to get out, is how he determined which bus driver to talk to, not—

THE COURT: But that would be based upon—

[Petitioner's counsel]:—who said what to him.

THE COURT:—but that would be based upon what Metro told him.

[Petitioner's counsel]: No. It would be based on—well, yeah, in terms of individual, but he would ask for the specific individual based on the time the bus would have been there.

[State]: It is still hearsay.

THE COURT: Yes, I know.

[Petitioner's counsel]: He also tried to obtain the videotape from the bus because there is a surveillance tape. There was no tape, apparently, operating. That wouldn't be hearsay. I think that—

[State]: Well, it depends. It depends on what the question is if it would be hearsay or not.

THE COURT: Well, if he was able to identify the bus in question and if he—

[State]: Really, though, given the recollection of the driver is that he didn't see anything, we know that he located a bus that stopped at around a particular time and that he took a tape from it. We have no way of knowing if that is in fact the bus. Officer Patel certainly wasn't there.

THE COURT: Well, presumably the police were satisfied they had located the bus or they would have looked at other buses.

[State]: But the question is, What question can be asked of Officer Patel?

[Petitioner's counsel]: *I don't get to ask them that in their case, and I think that I can ask it without eliciting hearsay.* He was given information which caused him—she got a particular—I am not asking what information was obtained. I am just asking him what bus driver he sought out and why and did he find any evidence or was he able to get a videotape or whatever.

[State]: Well, but we also then are going to get into—there is nothing on the tape and there is an explanation for why there is nothing on the tape, and Officer Patel knows what he was told.

THE COURT: What is the explanation for why there is nothing—there was no tape; right?

[State]: Right. The machine wasn't working.

THE COURT: Was there even a tape there, though?

[State]: There was a tape there, but it hadn't been working. Apparently, for some union rules they stopped taping things to protect the bus drivers, like a couple of months prior.

[State]: Right. That is what this is all about. So there is nothing—

[Petitioner's counsel]: Every tape—

[State]:—there is nothing on the tape.

[Petitioner's counsel]: No. I am conceding that. I am just saying that—

THE COURT: But then what would the relevance be that he went to get a tape that wasn't there?

[State]: The only relevance—

THE COURT: I am asking [petitioner's counsel].

[State]: Sorry.

[Petitioner's counsel]: Well, I think the relevance is that there isn't—the best evidence isn't available, which would be the videotape, which isn't—

THE COURT: But there is a benign reason for that.

[Petitioner's counsel]: Right, and I am not suggesting that I am asking for a missing evidence rule or anything, instruction on that particular issue; but I still think that I am

entitled to ask him which bus route he would have—what time the bus would had been there, that he sought out that bus—

THE COURT: Okay. Well—

[Petitioner's counsel]:—or at least establish that he only talked to one bus driver.

THE COURT:—with respect to the issue of the tape, it would appear to me that the only potential relevance would be if you could fashion argument that the Government failed to do something that they should have done, but the proffer is that they did locate a bus they believed to be the bus, they tried to get the tape but the tape was inoperable.

So, in light of that proffer, it would not be relevant because, if the explanation were presented to the jury, it would have no evidentiary significance and it could not be held against the State for a failure to conduct an adequate investigation mindful of their burden. So I will not permit that either."

Petitioner's counsel then asked if she would be permitted to elicit the bus schedule from Officer Patel because it was important to the truthfulness of the witnesses as to how long they had been at the bus stop. The Court denied the request because the Officer did not have personal knowledge of the schedule. The court concluded *sua sponte* that "based upon what [petitioner's counsel was] proffering to [the court], what I would suggest that we do is—there is nothing that [petitioner's counsel has] proffered to [the court] about Patel that would be admissible through Patel." [8] The Court dismissed Officer Patel and adjourned for the day to allow the petitioner's counsel to determine if Officer Wells would be able to testify. With respect to Officer Wells's testimony, however, the court cautioned petitioner's counsel: "[I]f your only purpose in calling Wells is to have him testify about what other

---

**8.** Unless the State objected, the testimony might well have been admitted.

people told him, then I am not going to admit that through Wells."

The next day, the court reconvened and, after sorting out all the exhibits and the fact that Officer Wells had not been subpoenaed and would not testify,[9] the court asked petitioner's counsel if there were any unresolved issues before calling the jury into the court room. The following discussion ensued:

"[Petitioner's counsel]: Well, actually, ... I mentioned in chambers last night that I did have one civilian witness I wanted to call, and she is here.

THE COURT: Okay. And what would that witness testify to?

[Petitioner's counsel]: Well, she is in the room. Would you like me to ask her to leave—

THE COURT: By all means. There is a rule on witnesses.

[Petitioner's counsel]:—because she came in late. Ms. Blizzer (ph), can you step out of the room for a minute?

*Your Honor, I also wanted to note an objection that I have to proffer what witnesses are going to testify to. I mean, [the State] can make objections just like I have to.*[10]

THE COURT: Okay. The objection is noted. Overruled." [Emphasis added.]

---

9. It was determined that Officer Wells would not be available to testify. Petitioner's counsel conceded at oral argument that Officer Wells would have been unavailable. It is important to note, however, that, as stated *supra*, the court engaged in the same line of questioning regarding Officer Wells's testimony and stated that, had the petitioner been able to secure Officer Wells's attendance, he would not be allowed to testify because his testimony was also hearsay. After the court made that statement, petitioner's counsel duly stated for the record that there could be some other testimony regarding the conduct of the investigation to which Officer Wells may have been able to testify without violating the hearsay rule or within one of its exceptions.

10. Other than the exchange that is the subject of the first question raised in the petition and briefs, the trial court did not make the State proffer the testimony of its twelve witnesses. The imposition of the proffer requirement was blatantly one-sided.

Petitioner's counsel then explained that Ms. Blizzer would testify to Watson's habit of loitering around the bus stop and to his reputation in the community. Only then, after the trial court forced petitioner's counsel to make a proffer, did the State object to the proffer, alleging that it was only relevant to a collateral issue and that Ms. Blizzer did not have personal knowledge of Watson's habits. Petitioner's counsel stated that Ms. Blizzer did have personal knowledge, and the discussion then continued:

"THE COURT: Okay. It would appear to the Court that certainly his character [f]or truthfulness would be an issue since he has testified. And so, to cross-examination, the jury is entitled to hear anything that would relate to his character trait for truthfulness. But I don't think the testimony really addresses itself to that issue.

Instead, at best, it is an effort to try to impeach him with respect to some collateral issues. And as I recall, the way in which the testimony unfolded, the issues which you seek to impeach him on are issues that were generated in the cross and not in the direct.

As the State rightfully points out, as it might bear upon his reputation for violence—and I don't even concede that it does—but were it to, that has not been generated by the facts of this case. There is no defense of self-defense.

And aside from that, as I understood from our conversation in chambers, and I gather what is being alluded to now, is that this activity that you described that she could testify to, perhaps in part by personal observations—but what you did say was she came to find out in the neighborhood that he does these things, which suggests that it is also—
[Petitioner's counsel]: Well, that is from—
THE COURT:—to some extent from other persons; that as a result of this kind of activity which you wish to attribute to him, that there could have been other people out there who wanted to kill him and presumably Mr. Sidibe as well.

And I do share the State's view that that is so speculative that there is no reasonable foundation for the jury to

reasonably infer that even if he did the things that you described him as doing, that by virtue of that on the night in question, that somebody would have set about to shoot him at the 7–Eleven and, as well, Mr. Sidibe at the same time.

*So based upon the proffer, I find that she has no relevant testimony to offer. I will not permit you to call her.*

[Petitioner's counsel]: Well, Your Honor, I just also want to say that with respect to the relevance about him standing out there—and she personally observed this; I verified that when I spoke with her—that she lives in that neighborhood. He has been there frequently—on several evenings. He is well known. Reputation is always, among the group of people that live in the community or have access to the person, an issue.

And the fact is that this man was standing on the corner, and he does whatever he does. And I wasn't trying to call her to suggest that somebody—I don't have somebody else that did this, obviously, or I would have called them.

However, I do think that the fact that he is frequently there and he is frequently standing there does lead the inference that there were other people that would have known that he is standing there more than he will.

And that, I think, is a very important issue because I asked every single witness, Do you know him? What is your relationship? How would he know that he was still standing there a half an hour later or more?

But if other people are aware that he is always there, then there is an issue because clearly this is a person that wasn't just randomly there for 10 minutes this one particular time. This was somebody that is a regular fixture there.

And frankly, in terms of whether or not there is a sufficient motive as to him to do the acts he is alleged to have done, how am I supposed to know whether or not somebody else would have a motive? How could I possibly investigate that?

THE COURT: Okay. *Notwithstanding your additional remarks, it still seems to me that the reasons basically*

*relate to the same reasons the Court has already discussed.
I will not permit you to call the witness based upon your
proffer.*

[Petitioner's counsel]: All right.

THE COURT: So the defense rests?

[Petitioner's counsel]: *I guess so, since I am not allowed to
call any witnesses.*

THE COURT: Okay. The defense rests." [Emphasis added.] (May 22, T. 24–30).

Petitioner's counsel renewed the motion for judgment of acquittal, which the court denied. The parties discussed with the court the instructions that were about to be given to the jury and the jury was then called into the court room. Following instructions and deliberation, the jury found petitioner guilty on all charges.

## II. Standard of Review

In *Hopkins v. State*, 352 Md. 146, 721 A.2d 231 (1998), this Court delineated the standard of review to be used on issues related to the admissibility of evidence at trial:

"Trial judges are afforded 'broad discretion in the conduct of trials in such areas as the reception of evidence.' *Void v. State*, 325 Md. 386, 393, 601 A.2d 124, 127 (1992) (quoting *McCray v. State*, 305 Md. 126, 133, 501 A.2d 856, 860 (1985)). Accordingly, in our appellate review, we extend the trial court great deference in determining the admissibility of evidence and will reverse only if the court abused its discretion. *Robinson v. State*, 348 Md. 104, 121, 702 A.2d 741, 749 (1997) ('The determination of whether specific evidence is relevant in a given case rests with the trial court, and that determination will not be disturbed on appeal absent a clear abuse of discretion.'); *Merzbacher v. State*, 346 Md. 391, 404–05, 697 A.2d 432, 439 (1997) (explaining that appellate courts generally will not reverse a trial court on issues of the admissibility of relevant evidence unless a clear abuse of discretion can be shown); ... *Straughn v. State*, 297 Md. 329, 334, 465 A.2d 1166, 1169

(1983) (noting that admissibility of police identification photographs 'is a discretionary matter for the trial court.'); *Schear v. Motel Management Corp.,* 61 Md.App. 670, 682, 487 A.2d 1240, 1245–46 (1985) ('[A] determination as to relevance is left to the discretion of the trial judge.')."
*Hopkins,* 352 Md. at 158, 721 A.2d at 237.

In *Cooley v. State,* 385 Md. 165, 175–76, 867 A.2d 1065, 1071 (2005), addressing the abuse of discretion standard, we explained:

> " 'The abuse of discretion standard requires a trial judge to use his or her discretion soundly and the record must reflect the exercise of that discretion. Abuse occurs when a trial judge exercises discretion in an arbitrary or capricious manner or when he or she acts beyond the letter or reason of the law.' [*Jenkins v. State,* 375 Md. 284,] 295–96, 825 A.2d [1008,] 1015 [ (2003) ]. *See Nelson [v. State],* 315 Md. [62,] 70, 553 A.2d [667,] 671 [ (1989) ]; *Ricks v. State,* 312 Md. 11, 31, 537 A.2d 612 (1988). As this Court explained in *Wilhelm [v. State],* 272 Md. [404,] 413, 326 A.2d [707,] 714–15 [ (1974) ], 'The conduct of the trial must of necessity rest largely in the control and discretion of the presiding judge and an appellate court should in no case interfere with that judgment unless there has been an abuse of discretion by the trial judge of a character likely to have injured the complaining party.' "

In *Cooley,* the court determined that the trial court should not abrogate courtroom security to law enforcement officers. 385 Md. at 184, 867 A.2d at 1075. We did not, however, determine whether an abuse of discretion did in fact take place because the Court of Special Appeals had not addressed fully the abrogation issue. *Id.*

We recently recognized the standard of review for the admissibility of hearsay evidence in *Bernadyn v. State,* 390 Md. 1, 7–8, 887 A.2d 602, 606 (2005). In *Bernadyn,* where a proper objection was made, we stated that "a circuit court has no discretion to admit hearsay in the absence of a provision providing for its admissibility." *Id.* The case *sub judice,*

however, turns not on the admissibility of hearsay evidence but on the court's discretion to refuse the defendant to call witnesses for his defense. We review the court's decision not to allow the witnesses to testify under the abuse of discretion standard applicable to exclusion of evidence in general.

### III. Discussion

The Court of Special Appeals determined that the trial court did not abuse its discretion when it required petitioner to proffer the testimony of his witnesses in the presence of the prosecutor. *Kelly,* 162 Md.App. at 143, 873 A.2d at 446. The intermediate court found petitioner at fault for not having his witnesses ready at the close of the State's case. As stated previously, however, at least one of those witnesses was in the courtroom when it was time for him to testify. The Court of Special Appeals points to *Wilson v. State,* 345 Md. 437, 448, 693 A.2d 344, 350 (1997), for the proposition that "requesting a proffer is helpful, even necessary, to a proper ruling." *Kelly,* 162 Md.App. at 142, 873 A.2d at 445. Although we agree that proffers are helpful, they are not a substitute for the witnesses' testimony when the witnesses are present and able to testify. The intermediate appellate court agreed with the trial judge's finding that because the proffer by petitioner's counsel indicated that the witnesses' testimony was hearsay, the trial court did not err in refusing to allow the witnesses to testify. *Id.* As explained *infra,* however, the court's error was not in the nature of the evidence as hearsay, but instead in how it determined that the testimony would be hearsay. Moreover, hearsay is only excluded upon an objection to it. It may be very relevant.

Many of the statements in the case law relevant to the issue before us relate to compulsory process. The language of the cases, however, is pertinent to the present issue. The Supreme Court of the United States has held that "the right of a defendant in a criminal case under the Sixth Amendment to have compulsory process for obtaining witnesses in his favor is applicable to the States through the Fourteenth Amendment...." *Washington v. Texas,* 388 U.S. 14, 14–15, 18, 87 S.Ct. 1920, 1921, 1923, 18 L.Ed.2d 1019 (1967) (footnote

omitted). We have recognized this holding in a number of cases. *Wilson,* 345 Md. at 445, 693 A.2d at 348; *Redditt v. State,* 337 Md. 621, 655 A.2d 390 (1995); *Void v. State,* 325 Md. 386, 601 A.2d 124 (1992). In addition to the federal protection under the Sixth Amendment, the right to compulsory process is protected under Article 21 of Maryland Declaration of Rights, which states "[t]hat in all criminal prosecutions, every man hath a right ... *to examine the witnesses for and against him on oath ....*" (emphasis added); *see Wilson,* 345 Md. at 445, 693 A.2d at 348.[11]

In *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), the Court explained:

"We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense."

*Id.* at 709, 94 S.Ct. at 3108, 41 L.Ed.2d 1039. It is the adversarial system of justice which requires that the defendant be given every opportunity, within procedural and evidentiary boundaries, to present a defense. Here the defendant was effectively denied the only defense available to him—the witnesses he hoped would provide favorable testimony.

In *Washington,* the defendant was not allowed to call an exculpatory witness under a Texas statute, which

---

11. In *Wilson,* Judge Wilner pointed out that, not only has the language of Article 21 remained intact since its introduction as Article 19 of the Declaration of Rights of 1776, it "may have served as the model for Madison's draft of the Sixth Amendment...." 345 Md. at 445, 693 A.2d at 348.

prohibited co-participants in a crime to testify at each other's trials. Chief Justice Warren reviewed the history of compulsory process, stating:

> "Joseph Story, in his famous Commentaries on the Constitution of the United States, observed that the right to compulsory process was included in the Bill of Rights in reaction to the notorious common-law rule that in cases of treason or felony the accused was not allowed to introduce witnesses in his defense at all. Although the absolute prohibition of witnesses for the defense had been abolished in England by statute before 1787, the Framers of the Constitution felt it necessary specifically to provide that defendants in criminal cases should be provided the means of obtaining witnesses so that their own evidence, as well as the prosecution's, might be evaluated by the jury."

*Washington,* 388 U.S. at 19–20, 87 S.Ct. at 1923, 18 L.Ed.2d 1019 (footnote omitted). As a result, the right to compulsory process and the right to present one's witnesses are fundamental rights essential to due process:

> " *'Few rights are more fundamental than that of an accused to present witnesses in his own defense.* In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed. . . . *In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.'* "

*Foster v. State,* 297 Md. 191, 206, 464 A.2d 986, 993 (1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984) (quoting *Chambers v. Mississippi,* 410 U.S. 284, 300–02, 93 S.Ct. 1038, 1048–49, 35 L.Ed.2d 297 (1973)); *Void,* 325 Md. at 392, 601 A.2d at 126. This Court has also recognized that

the " 'right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. *The right[ ] to ... call witnesses in one's own behalf ha[s] long been recognized as essential to due process.*' " *Foster,* 297 Md. at 203–04, 464 A.2d at 993 (quoting *Chambers,* 410 U.S. at 294–95, 93 S.Ct. at 1045, 35 L.Ed.2d 297).

The right to compulsory process does not end with the ability to subpoena witnesses to show up in court. That right encompasses the defendant's ability to elicit testimony from those witnesses present at trial:

" 'The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. The right is a fundamental element of due process of law.' "

*Wilson,* 345 Md. at 447, 693 A.2d at 349 (quoting *Washington,* 388 U.S. at 19, 87 S.Ct. at 1923, 18 L.Ed.2d 1019); *Redditt,* 337 Md. 621, 655 A.2d 390. In *Void* we also determined that " '[t]he right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact.' " 325 Md. at 394, 601 A.2d at 127 (quoting *Taylor v. Illinois,* 484 U.S. 400, 408, 108 S.Ct. 646, 652, 98 L.Ed.2d 798 (1988)). In the case *sub judice* the defendant was denied even the right to present the witnesses he chose to call who were in court at the time. While the right to elicit certain types of testimony by opposing counsel, upon proper objection, may be denied, the right to present the witnesses in the first instance should not be. That is especially so when defense counsel specifically informs the court that she only knows what questions she will ask of a witness, but not the answers.

Cases involving the trial court's discretion in allowing or requiring a witness to testify can be divided into two distinct categories. *Wilson,* 345 Md. at 447–48, 693 A.2d at 349. First, when the witness is unavailable and the court either refuses to give the defendant more time to secure the witness attendance or the court refuses to require the witnesses to testify. *Id.; Void,* 325 Md. at 392, 601 A.2d at 126. The second category, as in the case *sub judice,* the witnesses are present and available but for one reason or another the court refuses to allow them to testify. *Wilson,* 345 Md. at 447, 693 A.2d at 349; *Redditt,* 337 Md. 621, 655 A.2d 390; *McCray v. State,* 305 Md. 126, 501 A.2d 856 (1985).

We addressed the right to compulsory process in *Wilson,* 345 Md. at 450, 693 A.2d at 350. Wilson was originally convicted of possession of heroin. On appeal he argued that the trial "court erred in refusing to issue a body attachment for one of his witnesses, whom he had duly subpoenaed and who failed to appear in court." *Id.* at 440, 693 A.2d at 345. The trial court had refused to issue the attachment and grant a continuance because " '[t]he likelihood that we're going to get that witness in here and have her testify and help to— your client seems so remote, it just does not warrant the expenditure of other resources.' " *Id.* at 444, 693 A.2d at 348. We held that

"the right to compulsory process embodies more than just the right to have a subpoena issued, even if it does not constitute an actual guarantee of attendance. We must keep in mind that the *raison d'etre* of the right of compulsory process is the right of the defendant to present a defense, and that right would hardly be served if the subsidiary right were limited to the issuance of a subpoena. A defendant needs his or her witnesses in court, not simply subject to later punishment for failure to obey a subpoena."

*Id.* at 450, 693 A.2d at 350.

While we recognized that the petitioner has a right to compulsory process, we also acknowledged that this right has limitations:

"The right of compulsory process, under both the Federal and State Constitutions, though fundamental, is not absolute. It does not, for example, confer a right to present inadmissible evidence, and thus is not violated if a court declines to subpoena, grant a continuance to locate, or otherwise assist in the apprehension or production of a missing witness, in the absence of a showing that the testimony of that witness would be both admissible and helpful to the defense. The Supreme Court made that clear in *Taylor v. Illinois* and *United States v. Valenzuela–Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). In *Taylor, supra,* 484 U.S. at 410, 108 S.Ct. at 653, 98 L.Ed.2d at 811, the Court held:

'The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence. The Compulsory Process Clause provides him with an effective weapon, but it is a weapon that cannot be used irresponsibly.'

In *Valenzuela–Bernal,* the Court confirmed the additional element of materiality to the defense, pointing out that, to establish a violation of the compulsory process clause, the defendant 'must at least make some plausible showing of how [the] testimony would have been both material and favorable to his defense.' 458 U.S. at 867, 102 S.Ct. at 3446, 73 L.Ed.2d at 1202."

*Wilson,* 345 Md. at 448, 693 A.2d at 349–50; *see also Chambers,* 410 U.S. at 295, 93 S.Ct. at 1046, 35 L.Ed.2d 297("Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. But its denial or significant diminution calls into question the ultimate ' "integrity of the fact-finding process" ' and requires that the competing interest be closely examined.") (citations omitted).

*Wilson* involved an effort to secure the presence of witnesses and the limitations there discussed relate to whether the court was required to delay the proceedings while the witnesses were secured with compulsory process and thus

made available. In the present case at least two witnesses were present, yet the trial court required defendant to make a proffer and then denied him the right to call the witnesses— which in essence denied him the right to assert a defense.

Moreover, the petitioner made the required showing to, at the very least, permit him to question the witnesses. Petitioner's counsel proffered that Officer Patel would testify to the conduct of the investigation questioning the events related by the three victims. Ms. Blizzer was to impeach Watson's testimony, which would go to his credibility as a witness. This testimony presumably could have been favorable to the petitioner. Watson was one of two witnesses who could identify the petitioner as the shooter. The trial court's refusal to place the witnesses on the stand was premature.

This Court has previously held that "[t]he proper time for the judge to determine the admissibility of [witnesses'] testimony was upon their examination." *Void*, 325 Md. at 392, 601 A.2d at 126. Void was convicted of a number of criminal offenses. The State's main witness was Officer Steedley who had been accused, but acquitted of perjury in respect to his prosecution for drug related offenses. *Id.* at 390, 601 A.2d at 125. The defense intended to call as witnesses two other officers who had previously testified against Steedley in his trial for perjury. The defense's purpose was to call these witnesses to testify as to Steedley's character for truth and veracity. The State moved to quash the defense's subpoenas alleging that the defense would try to impeach the witness with evidence of prior bad acts for which he had been acquitted. The trial judge agreed with the State and quashed the subpoenas preventing the defendant from calling the officers to testify. The Court of Special Appeals affirmed the conviction in an unreported opinion, and this Court reversed stating:

"We believe that a fair conclusion can be drawn from the proceedings at the hearing on the motion that the testimony Void sought was directed to the character of Steedley. We are not in accord with the State's notion that Void was merely attempting to introduce evidence of prior bad acts by Steedley under the guise of character evidence. It may

be that defense counsel's argument could have been articulated in more specific terms. And perhaps some of the reasons he gave for desiring the witnesses' testimony, and which the judge declared he would not permit, may not have been admissible. But that did not justify precluding Void's examination of the witnesses. *The proper time for the judge to determine the admissibility of their testimony was upon their examination.*"

*Void,* 325 Md. at 392, 601 A.2d at 126 (emphasis added).

In *Void,* the judge relied on the witnesses' affidavits, motions and proffers by counsel on arriving at the decision to quash the subpoenas. The witnesses had submitted signed affidavits stating that they had no knowledge of the defendant's proceedings or his character, and that their knowledge of Steedley was derived exclusively from their investigation into the drug related offenses. The State had complained that requiring the officers to be in court would place a great burden upon the department. This Court determined that all this information was not sufficient to allow the trial court to prevent the defendant from calling his witnesses. The Court in closing stated:

"The short of it is that the trial judge should have heard from the subpoenaed witnesses, either at a pretrial hearing or at the trial out of the presence of the jury. He could, at that time, determine whether the witnesses had admissible testimony to offer. He erred in short-circuiting the common law and statutory rights of Void by quashing the subpoenas. Void is entitled to a new trial."

*Void,* 325 Md. at 394, 601 A.2d at 127–28 (citations omitted). Likewise, in the case *sub judice,* the trial judge should have allowed the witnesses to testify and rule on the admissibility of their testimony, if proper objections were made, during questioning by the defense, not before. His ruling upon that testimony based upon petitioner's proffer was premature, specially in light of the fact that two witnesses were present, ready, and able to testify. As stated in *Void,* if there were concerns as to the admissibility of their testimony, the judge

could have allowed the petitioner to question the witnesses out of the presence of the jury. Such an approach would allow the State to make the appropriate objections on the testimony to be offered. Instead, the court *sua sponte* opted to require the petitioner's counsel to proffer the questions she was going to ask. It then decided that, because such questions would only elicit hearsay testimony, the witnesses would not be allowed to testify. In doing so, the judge went beyond being an impartial officer in dismissing testimony which, had the State failed to timely object, might have been admitted.

In cases where the witnesses have been in the courtroom and are immediately available to testify we have held that exclusion of testimony can constitute error. *Redditt*, 337 Md. at 635, 655 A.2d at 397; *McCray*, 305 Md. at 135, 501 A.2d at 860. In *McCray*, a witness was not allowed to testify because she had been present throughout the trial and the trial court believed that she should have been sequestered. The State had not requested a sequestration order because the defendant had stated that she was to be the only witness on his behalf. When the defense asked the court to allow the testimony of a surrebuttal witness who had been in the courtroom throughout the trial, the court refused. This Court held that in the absence of a sequestration order, the court abused its discretion when it refused to allow the witness to testify. *McCray*, 305 Md. at 135, 501 A.2d at 860. In *Redditt*, a witness remained in the courtroom although a sequestration order was in effect. The trial court, again, refused to allow the witness to testify. This Court determined that the trial court abused its discretion in excluding the witness. 337 Md. at 635, 655 A.2d at 397.

Additionally, in our adversarial system, generally it is the parties that are charged with objecting to the propriety of the evidence presented at trial. Maryland Rule 4-323 provides:

"(a) **Objections to Evidence.** *An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection*

*become apparent. Otherwise, the objection is waived.* The grounds for the objection need not be stated unless the court, at the request of a party or on its own initiative, so directs. The court shall rule upon the objection promptly. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court may admit the evidence subject to the introduction of additional evidence sufficient to support a finding of the fulfillment of the condition. The objection is waived unless, at some time before final argument in a jury trial or before the entry of judgment in a court trial, the objecting party moves to strike the evidence on the ground that the condition was not fulfilled." (Emphasis added.)

When a party fails to object, the evidence normally will be admitted and, generally, that party will not be allowed to raise the issue on appeal. *Klauenberg v. State,* 355 Md. 528, 539, 735 A.2d 1061, 1067 (1999); *Brazerol v. Hudson,* 262 Md. 269, 275–76, 277 A.2d 585, 588–89 (1971); *Gwaltney v. Morris,* 237 Md. 173, 178, 205 A.2d 266, 268 (1964). As a result, it is incumbent upon the State to make the objections to the testimony as it is elicited by the defense. When the trial court makes a ruling as to the admissibility of evidence on its own without a prior objection by any of the parties, the court leaves its role as an arbiter and assumes another role as a party to the proceeding, placing into question the defendant's right to a fair trial. Especially where, as here, it requires a preexamination proffer as to all of the defendant's witnesses— but never required a preexamination proffer as to either of the State's witnesses. In this situation, the trial court was becoming an advocate for the State.

We have addressed the issue of the trial court's departure from its role as an impartial arbiter mostly in cases where the court questioned the witnesses, the defendant or inappropriately addressed counsel in front of the jury. *Johnson v. State,* 352 Md. 374, 722 A.2d 873 (1999) (reversing the judgment due to the trial court's order to arrest defense counsel in the presence of the jury, frequent interruptions, the court's own questions preventing the defense from asking his questions);

*Marshall v. State,* 291 Md. 205, 213, 434 A.2d 555, 559 (1981) (reversing the judgment because the court improperly admonished the defendant to tell the truth causing him "to testify in a certain way, out of fear that if he did not, he would suffer some severe, but unexplained consequence."); *Vandegrift v. State,* 237 Md. 305, 311, 206 A.2d 250, 254 (1965) ("The questioning by the trial judge showing his disbelief of the witness' testimony was beyond the line of impartiality over which a judge must not step."). Although, the conduct of the trial judge in the case *sub judice* is not as egregious as that of the judges in the cases cited *supra,* and it was not in the presence of the jury, it nonetheless resulted in the denial of the defendant's right to put on a defense. This is clear from petitioner's counsel statement in response of the court's question of whether the defense was resting its case: *"I guess so, since I am not allowed to call any witnesses."*

We addressed the discretion of the trial court to ask questions of witnesses in a jury trial in *Marshall,* stating:

"In sum, while we agree with the court below that a judge presiding over a jury trial has the right to interrogate witnesses in an effort to clarify the issues, we stress that he should exercise this right sparingly. It is a far more prudent practice for the judge to allow counsel to clear up disputed points on cross-examination, unassisted by the court. In this manner, the judge is most likely to preserve his role as an impartial arbiter, because he avoids the appearance of acting as an advocate."

291 Md. at 213, 434 A.2d at 560. Furthermore, "the defendant is entitled to present and conduct his defense unhampered by the judge's idea of what that defense is or how it should be presented." *Id.* at 214, 434 A.2d at 560. The same principles apply when the judge requires defense counsel, *and only defense counsel,* to provide detailed proffers of the testimony to be presented in the presence of the prosecution as to each of the defendant's potential witnesses.

When the court assumes the role of a party by ruling on the admissibility of evidence in the absence of

appropriate objections, the court departs from the adversarial nature of our system where the State, not the court, bears the burden of objecting to the testimony offered by the opposing party. Should the State fail to object, otherwise inadmissible evidence sometimes may be admitted to the detriment of its case because—as explained *supra*—such a failure to object is considered a waiver. This is not to say that the defendant will be allowed to present properly objected to testimony that violates the rules of evidence or procedure. It merely requires that exclusion take place at the appropriate time and in the appropriate manner. The responsibility of the trial court to control the proceedings before it does not extend to the right to take over a party's case. When that occurs, as it occurred here, the court risks denying to a defendant the fair trial guaranteed to him by both the United State's Constitution and Maryland's Constitution.

We agree with the Court of Special Appeals that "[t]he conduct of the trial must of necessity rest largely in the control and discretion of the presiding judge." *Kelly*, 162 Md.App. at 141, 873 A.2d at 446 (quotation marks omitted) (quoting *Cooley*, 385 Md. at 176, 867 A.2d at 1071). That control, however, must safeguard the defendant's constitutional rights. The trial court denied petitioner his constitutional right to present a defense by not allowing the witnesses who were present to even be presented. Under the circumstances here present, his refusal constitutes an abuse of discretion, requiring that petitioner be granted a new trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMAND THE CASE TO THAT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY MONTGOMERY COUNTY.**

RAKER and HARRELL, JJ. dissent.

RAKER, J., dissenting, in which HARRELL, J., joins.

To reverse this case would be a travesty upon justice. Petitioner received a fair trial before a fair judge, and was not deprived of due process in any way. In addition, petitioner was not denied his right to be present at every critical stage of the trial when, in petitioner's absence, the trial judge received a proffer of the State's proposed evidence to determine whether a witness for the State would be permitted to testify before the jury. I agree with the Court of Special Appeals that the judgments of conviction should be affirmed. *Kelly v. State*, 162 Md.App. 122, 873 A.2d 434 (2005).

## I.

Holding that the trial court denied petitioner the right to put on a defense, the majority reverses the judgments of conviction and holds that "the trial court abused its discretion when it refused to allow the petitioner to present his witnesses." Maj. op. at 516–17, 898 A.2d at 422. The majority reasons as follows:

> "When the court assumes the role of a party by ruling on the admissibility of evidence in the absence of appropriate objections, the court departs from the adversarial nature of our system where the State, not the court, bears the burden of objecting to the testimony offered by the opposing party. Should the State fail to object, otherwise inadmissible evidence sometimes maybe admitted to the detriment of its case because—explained *supra*—such a failure to object is considered a waiver. This is not to say that the defendant will be allowed to present properly objected to testimony that violates the rules of evidence or procedure. It merely requires that exclusion take place at the appropriate time and in the appropriate manner. The responsibility of the trial court to control the proceedings before it does not extend to the right to take over a party's case. When that occurs, as it occurred here, the court risks denying to a defendant the fair trial guaranteed to him by both the United States Constitution and Maryland's Constitution."

Maj. op. at 542–43, 898 A.2d at 437–38. The majority holds that "[u]nder the circumstances here present, his refusal constitutes an abuse of discretion, requiring that petitioner be granted a new trial." *Id.* at 543, 898 A.2d at 437–38.

I have difficulty understanding the majority's basis for reversing this conviction. It appears that the Court is reversing the convictions solely because the trial judge required defense counsel to proffer the relevance of witnesses testimony rather than to permit the defendant to call the witnesses before the jury. The majority states that reversal is necessary because "the court's error was not in the nature of the evidence as hearsay, but instead in *how* it determined that the testimony would be hearsay." Maj. op. at 532–33, 898 A.2d at 431 (emphasis added). The majority seems to be grossly offended that the trial court required defense counsel to proffer the relevancy of the testimony he wished to present to the jury and that such a procedure, *in and of itself,* requires reversal and a new trial. Without any discussion of the relevancy of the proposed evidence, the majority decides that petitioner "was effectively denied the only defense available to him—the witnesses he hoped would provide favorable testimony." *Id.* at 533, 898 A.2d at 431–32. The majority notes that the right to compulsory process includes the right to subpoena witnesses to compel their attendance at trial and the right to present a defense, *i.e.,* the defendant's version of the facts to the jury. *Id.* at 532–38, 898 A.2d at 431–35. Following this protracted discussion of the constitutional right to compulsory process, the majority concludes that petitioner was denied the right to assert a defense, apparently because "the trial court required defendant to make a proffer and then denied him the right to call the witnesses. . . ." *Id.* at 537–38, 898 A.2d at 434–35.

The majority focuses solely on the procedure employed by the trial court in excluding the testimony of Officer Patel and Ms. Blizzer. The majority never analyzes the admissibility of the proffered testimony, and effectively concedes that the testimony of petitioner's witnesses would have been properly excluded as hearsay. See maj. op at 532–33, 898 A.2d at 431. The majority's argument for reversal, then, appears to be that (1) the trial court used an impermissible procedure in exclud-

ing the testimony of petitioner's witnesses, thereby depriving petitioner of his constitutional right to present a defense, and (2) that petitioner was prejudiced by the trial court's use of this procedure because the testimony of his proposed witnesses, even though it was hearsay, may have nonetheless aided his case because the prosecution may have neglected to object to its admission into evidence. *See* maj. op. at 540–41, 898 A.2d at 436–37. This argument is unpersuasive.

To the extent that the majority's decision rests on the premise that the rules of trial practice and evidence do not permit a trial court to employ the procedure used by the trial court to exclude the testimony of petitioner's witnesses, it is mistaken.[1] *Cf.* Md. Rules 5–103, 5–104, and 5–602. The majority recognizes that the trial judge has discretion to control the trial. *See* maj. op. at 530–32, 898 A.2d at 430–31 (quoting *Cooley v. State*, 385 Md. 165, 175–76, 867 A.2d 1065, 1071 (2005)). It is well-established that a trial judge's discretion to control the conduct of the trial gives a trial court the authority to exclude inadmissible evidence *sua sponte*. *See, e.g., Weaver v. United States*, 374 F.2d 878, 882 (5th Cir.1967); *United States v. Clarke*, 390 F.Supp.2d 131, 135 (D.Conn.2005) ("[a]n objection is not ... a precondition to the exclusion of evidence"); *People v. Sturm*, 37 Cal.4th 1218, 39 Cal.Rptr.3d 799, 129 P.3d 10, 23 (2006) (observing that "it is well recognized that the trial judge ... may sua sponte exclude irrelevant evidence"); *Morris ex rel. Morris v. Thomson*, 130 Idaho 138, 937 P.2d 1212, 1218 (1997) ("trial court may exclude evidence offered by a party on its own authority, without a motion to strike or an objection made by the opposing party"); *Barber v. State Highway Comm'n*, 80 Wyo. 340, 342 P.2d 723, 727 (1959) (noting that trial judge, being "more than a mere referee," has a duty to control the conduct of the trial so that

---

1. The majority seems to hold that an accused has an *absolute* right to put witnesses before the jury, irrespective of whether the witness has any admissible testimony to offer. Consequently, the majority seems to be saying that the trial court has no discretion to require a proffer of the testimony of a criminal defense witness when the witness is present at court and able to testify. For the reasons stated above, I disagree.

"the true facts in a given litigation" may be ascertained, and that a trial judge may rule *sua sponte* on the admissibility of evidence to accomplish this end).

It is equally well-established that it is not necessary for witness testimony to be presented before the jury in order for the testimony to be excluded legitimately from evidence, and that a trial judge may exclude inadmissible testimony prior to presentation to the jury on the basis of a proffer of the testimony. *See, e.g., State v. Martinez,* 824 A.2d 443, 448 (R.I.2003) (observing that exclusion of evidence by means of a motion *in limine* "has become widely recognized as a salutary device to avoid the impact of unfairly prejudicial evidence upon the jury and to save a significant amount of time at the trial" (internal quotations omitted)).

Maryland Rules 5–103, 5–104, and 5–602 inferentially suggest that hearings outside the presence of the jury to determine admissibility are appropriate. Rule 5–103(c) provides as follows:

"(c) **Hearing of jury.** Proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to a jury by any means, such as making statements or offers of proof or asking questions within the hearing of the jury."

Rule 5–104 provides, in pertinent part, as follows:

"(a) **Questions of admissibility generally.** Preliminary questions concerning ... the admissibility of evidence shall be determined by the court....

(c) **Hearing of the jury.** Hearings on preliminary matters shall be conducted out of the hearing of the jury when required by rule or the interests of justice."

In tandem, Rules 5–103(c) and 5–104 plainly permit, and sometimes require, a trial court to rule on the admissibility of evidence [2] prior to its presentation to the jury. As the *Martinez* court observed, permitting trial courts to exclude evi-

---

**2.** The exception is found in Rule 5–104(b), which leaves questions of conditional relevance for the jury.

dence prior to presentation of the evidence to the jury serves the dual purposes of preventing the jury from examining unfairly prejudicial evidence and of saving time and expense at trial. *See Martinez,* 824 A.2d at 448. To promote these ends, Rule 5–103(c) provides that "[p]roceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to a jury by any means...."

In addition to permitting preliminary evidentiary rulings outside the presence of the jury on most matters, Maryland law *requires* a trial court to make an advance ruling outside of the presence of the jury on the admissibility of some types of evidence. For example, Rule 4–252 requires a criminal defendant to raise in a pretrial motion objections to the admission of evidence on grounds that it was obtained by "[a]n unlawful search, seizure, interception of wire or oral communication, or pretrial identification," or by "[a]n unlawfully obtained admission, statement, or confession." Rule 4–252(a)(3), (a)(4). If these issues are not timely raised by preliminary motion, ordinarily they are waived. Rule 4–252(a). The trial court is *required to rule on these motions in advance of trial.* Rule. 4–252(g)(1) (providing that "[m]otions filed pursuant to [Rule 4–252] shall be determined before trial, and, to the extent practicable, before the day of trial"). In addition, Maryland's rape shield law requires advance ruling outside the presence of the jury on the admissibility of evidence (including testimony) of prior sexual conduct of a victim towards a defendant in prosecutions for rape and certain other sexual offenses. *See* Md.Code (2002, 2005 Cum.Supp.), § 3–319(c) of the Criminal Law Article (prohibiting presentation of prior sexual history evidence to a jury "unless the court has first held a closed hearing and determined that the evidence is admissible"). Furthermore, trial courts are required to make an advance determination outside the presence of the jury on the admissibility of evidence "of other crimes, wrongs, or acts" under Md. Rule 5–404(b). *See State v. Faulkner,* 314 Md. 630, 633–35, 552 A.2d 896, 897–98 (1989) (detailing the procedure trial court must follow in determining the admissibility of such evidence).

A trial court does not exceed its authority when it raises the admissibility of the testimony of a witness *sua sponte*, and decides that issue on the basis of a proffer of the witness' testimony. Consequently, the trial judge in the instant case did not act without authority when he employed such a procedure to exclude the testimony of petitioner's witnesses. The only real question of procedure and evidence before us is whether the trial court excluded the testimony of the witness improperly, and the proper focus should be on the substance of the trial court's rulings, not the procedure it employed in making these rulings.

The majority is equally misguided in its contention that the procedure used by the trial court in excluding the testimony of petitioner's proposed witnesses violated petitioner's constitutional right to present a defense. The Confrontation Clause of the United States Constitution grants to the defendant the right to effective cross-examination of witnesses whose testimony is adverse. *See Davis v. Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974). The right granted by the Compulsory Process Clause of the United States Constitution is fundamental and essential to achieving a fair trial. *See Chambers v. Mississippi*, 410 U.S. 284, 294–95, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). Together, the two rights grant defendants a constitutional right to present evidence and a defense. *See Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967).

The right to present evidence is not absolute, however. A defendant does not have the constitutional right to present any and all evidence in support of a claim. *See Chambers*, 410 U.S. at 302, 93 S.Ct. at 1049; *Wilson v. State*, 345 Md. 437, 448, 693 A.2d 344, 349–50 (1997). A defendant in a criminal case "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 653, 98 L.Ed.2d 798 (1988); *see also United States v. Scheffer*, 523 U.S. 303, 308–309, 118 S.Ct. 1261, 1264–65, 140 L.Ed.2d 413 (1998) (noting that the right to present evidence is subject to the reasonable restrictions of evidentia-

ry rules that serve legitimate interests, including "ensuring that only reliable evidence is introduced at trial"); *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982) (holding that to establish a violation of the compulsory process clause, the defendant "must at least make some plausible showing of how [the] testimony would have been both material and favorable to his defense"); *Wilson*, 345 Md. at 448–49, 693 A.2d at 350–51.

As discussed above, the majority essentially concedes that the Court of Special Appeals did not err in concluding that the proffered testimony of petitioner's proposed witnesses was excludable from evidence as hearsay not subject to an exception. Because this testimony is evidence that does not meet the requirements of the rules of evidence for admissibility, petitioner was not deprived of any constitutional right by the trial court's conclusion that he could not present the testimony of his proposed witnesses.

Finally, even if the majority were correct that trial court's exclusion of the testimony of his proposed witnesses was error, the error must be both wrong and injurious.[3] As this Court has often stated, an error by the trial court does not warrant reversal "unless that error is both manifestly wrong and substantially injurious." *Lawson v. State*, 389 Md. 570, 580, 886 A.2d 876, 882 (2005) (internal citations and quotations omitted); Rule 5–103 (stating in relevant part that "[e]rror may not be predicated upon a ruling that admits or excludes evidence unless the party is prejudiced by the ruling"). Consequently, the Court does not reverse a conviction on the basis of an erroneous evidentiary ruling if that ruling does not prejudice the defendant. *Id.; Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665, 678 (1976).

The majority, however, seems content to reverse simply on the basis that it is possible that if petitioner's witnesses were permitted to testify, the prosecution would have failed to raise

---

**3.** *See* Rule 8–131(b)(1), providing that the Court of Appeals may consider the issue of harmless error even if not raised in a petition for writ of certiorari.

a hearsay objection and the testimony would have been admitted. The majority notes that "the court risks denying to a defendant the fair trial guaranteed to him by both the United States Constitution and Maryland's Constitution." Maj. op. at 543, 898 A.2d at 437–38. What is the standard applied by the majority? Is it the mere *risk* of denying a defendant a fair trial, or is it whether a defendant was prejudiced and was denied a fair trial that requires a new trial? The universal rule has always been that, absent structural error, it is not the *risk* of prejudice, but actual prejudice, that justifies a new trial. Judge Greene, writing for this Court in *Crane v. Dunn,* 382 Md. 83, 854 A.2d 1180 (2004), reiterated this principle as follows:

> "The exclusion of competent, relevant and material evidence may constitute prejudice and result in reversible error. It is the policy of this Court not to reverse for harmless error and the burden is on the appellant in all cases to show prejudice as well as error. Prejudice will be found if a showing is made that the error was likely to have affected the verdict below. 'It is not the possibility, but the probability, of prejudice which is the object of the appellate inquiry.' 'Courts are reluctant to set aside verdicts for errors in the admission or exclusion of evidence unless they cause substantial injustice.' Substantial prejudice must be shown. To justify the reversal, an error below must have been '. . . both manifestly wrong and substantially injurious.' "

*Id.* at 91–92, 854 A.2d at 1185 (internal citations omitted). The majority, abandoning this well-established approach, fails to adequately establish that the trial court's purported error in refusing to permit petitioner's proposed witnesses to testify was not harmless.

## II.

I would also hold that petitioner's constitutional right to be present at all critical stages of the proceedings against him was not violated when he was excluded from a conference addressing the question of whether the prosecution committed a discovery violation by failing to disclose the identity of a witness it intended to call at trial.

Judge Barbera, writing for the Court of Special Appeals, summarized the facts surrounding the discovery conference as follows:

"Defense counsel brought the alleged discovery violation to the attention of the trial court ... during a break in proceedings after the jury was selected but before it was sworn. In the presence of appellant, defense counsel informed the court that the State had included one Christian Phillips on its witness list. Counsel reported that she had asked the prosecutors about Phillips's identity and was told that he was a 'jailhouse snitch' who had come to the State's attention two weeks before trial. The prosecutors told defense counsel that Phillips was prepared to testify that appellant confessed to Phillips his involvement in the shootings. Defense counsel denied receiving any information about Phillips before trial and objected to the State's calling him as a witness.

"The prosecutors in turn explained that they had learned of appellant's statement to Phillips through Phillips's counsel. After interviewing Phillips, they informed defense counsel by letter that he might be called as a witness. Defense counsel denied receiving the letter. Before the matter was resolved, the prosecutors said that they had not yet decided whether they would be calling Phillips to testify. The court therefore tabled further discussion until such time as the State decided that it wanted Phillips to testify.

"The jury was sworn soon thereafter and trial began. On the evening of the second day of trial, after the jury had been excused for the day, the prosecutors notified the court that the State wanted Phillips to testify. The defense again objected. As the court prepared to take up the issue, defense counsel asked that appellant, who was then still in the courtroom, be permitted to be present for the discussion. The court denied the request, reasoning that no testimony would be taken; the question for decision was simply whether, based on the State's proffer of what Phillips might say, the State would be permitted to call him; and, if

Phillips were permitted to testify, appellant would have his right of cross-examination. The court then told the sheriffs that they could 'take [the defendant] because it is close to 6:00.'

"The discussion turned to whether and when the State had informed the defense that Phillips might be a State's witness. While explaining how Phillips had come to the State's attention, the prosecutors proffered what he would say if permitted to testify.

"The defense again disputed the State's assertion that it had informed the defense promptly upon learning that Phillips might be a State's witness. Defense counsel argued that it was 'patently unfair' to allow the State to call Phillips, pointing out that the defense had been given no opportunity to interview him.

"The court ruled that Phillips could testify, but only after the defense had a chance to speak with him."

*Kelly*, 162 Md.App. at 130–31, 873 A.2d at 438–39 (footnote omitted) (alteration in original).

Once the trial court found that there was no discovery violation and that Phillips, the State's witness, would be permitted to testify, the trial court considered the extent to which petitioner would be permitted to impeach Phillips's testimony on the basis of Phillips's recently entered guilty pleas and his pending sentencing hearing on the charges to which he plead guilty, scheduled to take place before the same judge that presided over petitioner's trial. The trial court ruled that the defense could impeach Phillips with his guilty pleas and the potential sentences he was facing on the charges to which he plead guilty.

After this ruling, defense counsel again argued for the exclusion of Phillips's testimony, this time apparently arguing that Phillips's testimony should be excluded on grounds other than as a sanction for a discovery violation.[4] The following exchange ensued between the trial court and defense counsel:

---

**4.** This line of argument was to some extent repetitive of some of the arguments defense counsel made during discussion of the discovery

"[Defense Counsel:] Also secondly, I think there is a bottom threshold issue here. You have to make a decision for any evidence that comes in. You have to do a balancing test on the credibility or the reliability of that evidence as—the permanent [sic] value versus the prejudicial effect." In a case like this,—

"[The Court:] As opposed to expert witnesses, you think a trial judge has to make a threshold decision in every case about whether a lay witness can testify and if the trial judge doesn't believe him, you think it is not admissible?

"[Defense Counsel:] If we can generate the issue that there is substantial prejudice involved in a witness testifying,—

"[The Court:] Let's say this argument. You find me the case that says that a trial judge determines the admissibility of lay testimony based upon a threshold even of credibility determination and then I will listen to your argument.

"[Defense Counsel:] It is not testimony. It is the rules. It is all evidence that comes in and more than that,—

"[The Court:] Okay. Give me the rule cite.

"[Defense Counsel:] [Md. Rule] 5–602 says also, the State has to—I will read it. The State—" a witness may not testify on a matter unless evidence is introduced sufficient to support finding that the witness has personal knowledge about the matter he is testifying about.' We have got a witness coming in here who has extensive motivation to fabricate this. I think there should be a threshold issue here of them establishing how this witness has personal knowledge of what he is testifying about.

"[The Court:] He is incarcerated with the defendant."

After some additional discussion of the impeachment issue, the trial court revisited the objections raised by defense counsel, and indicated again that it would refrain for the time being

---

issue. In ruling on the discovery issue, the trial court observed that these arguments raised "issues that go to the credibility of the witness which is for the jury to assess and not the Court to assess."

from ruling on his objections. The trial court then recessed for the day.

The United States Supreme Court has recognized that the right to personal presence at all critical stages of the trial is a fundamental right of a criminal defendant. *Rushen v. Spain,* 464 U.S. 114, 117–18, 104 S.Ct. 453, 455–56, 78 L.Ed.2d 267 (1983) (per curiam). The federal constitutional right of an accused to be present during all critical stages of the trial has two bases. The Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees an accused the right "to be present in the courtroom at every stage of his trial." *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353, 356 (1970).

The second basis for the constitutional right to be present is provided by the federal Due Process Clause of the Fifth and Fourteenth Amendments. The Supreme Court has recognized that the defendant's right to be present is protected by the Due Process clause in some circumstances where the defendant is not actually confronting witnesses against him or her. An accused has a due process right to be present at any proceeding related to the charges against the accused if the accused's "presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *Snyder v. Massachusetts,* 291 U.S. 97, 105–06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). In *United States v. Gagnon,* 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (per curiam), the Supreme Court noted that "[t]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by is absence, and to that extent only." *Id.* at 526, 105 S.Ct. at 1484 (internal quotations omitted). Accordingly, an accused has a constitutional right to be present at any proceeding where "his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987). In determining whether an accused's due process right to be present has been violated, a reviewing court should be careful to consider the accused's exclusion from a part of

**556**

the proceedings "in light of the whole record." *Gagnon,* 470 U.S. at 526–27, 105 S.Ct. at 1484.

Maryland law has long recognized that an accused has a right to be present at every critical stage of the trial. *See Tweedy v. State,* 380 Md. 475, 490, 845 A.2d 1215, 1224 (2004). An accused's right to be present was recognized at common law, and is protected also by Article 21 of the Maryland Declaration of Rights. *Id.* at 490–91, 845 A.2d at 1224. Rule 4–231 [5] implements an accused's federal and state constitutional rights to be present. *Id.* at 491, 845 A.2d at 1224.

Petitioner presents two arguments that his absence during the conference violated his constitutional right to be present. First, petitioner maintains that, to the extent that the court restricted itself to consideration of the discovery violation issue, petitioner had a right to be present because the trial court's ruling on the discovery issue was based in part on the prosecution's proffer of Phillips' testimony, which petitioner could have aided his counsel in challenging had he been present. Second, petitioner argues that, even assuming his constitutional right to be present would not have been violated if the trial court had restricted itself to consideration of the discovery issue while petitioner was not present, the trial court violated his right to be present when it proceeded to consider the other grounds for exclusion of Phillips' testimony raised by petitioner. Neither argument withstands scrutiny.

Petitioner's first argument is belied by examination of the discovery issue before the trial court, and the grounds upon which it rested its conclusion that there was no violation. The discovery issue before the trial court was whether the prosecution violated Rule 4–263(b). Rule 4–263(b)(1) requires the prosecution, upon request, to "[d]isclose to the defendant the

---

5. Rule 4–231(b) provides as follows:

"(b) **Right to be present—Exceptions.** A defendant is entitled to be physically present in person at a preliminary hearing and every stage of the trial, except (1) at a conference or argument on a question of law; (2) when a nolle prosequi or stet is entered pursuant to Rules 4–247 and 4–248."

name and address of each person then known whom the State intends to call as a witness at the hearing or trial to prove its case in chief or to rebut alibi testimony." Rule 4–263(h) provides that "[a] party who has responded to a request or order for discovery and who obtains further material information shall supplement the response promptly." Rule 4–263(i) states that "[i]f at any time during the proceedings the court finds that a party has failed to comply with this Rule or an order issued pursuant to this Rule, the court may order" a range of enumerated sanctions, including the striking of testimony, or any other sanctions which are "appropriate under the circumstances."

The discovery issue before the trial court was whether the prosecution had violated Rule 4–263(b)(1) and (h) by failing to timely supplement its original disclosure of its witnesses under Rule 4–263(b)(1) once it learned of Phillips and decided to offer him as a witness. In the course of reaching its conclusion that the prosecution did not violate the rule, the trial court relied principally on the representations of the attorneys. The prosecutors told the trial court that they interviewed Phillips in jail on May 7, and, after having decided to offer his testimony at trial on the basis of this interview, notified defense counsel of their intention to call Phillips by means of a letter sent on May 8. Defense counsel told the trial court that they did not read this letter, but conceded that they may have received it, explaining that they would have expected the prosecution to notify them by other means on the basis of their prior communications with the prosecution. On the basis of these representations by the parties' attorneys, the trial court found that the prosecution did not violate Rule 4–263(h), explaining its reasoning as follows:

"I don't find on the based upon the record that has been disclosed that it is a discovery violation. The information didn't become known apparently until the 7th. You were notified by mail on the 8th. I have no reason to believe that it wasn't sent. Why you didn't get it is unclear to me. I guess you, yourself suggest it might be in your in-box somewhere at your office."

Shortly thereafter, the trial court reiterated its conclusion, stating that "I don't find that there was any discovery violation. I don't find that there was any intentional concealing of the information by the State." As the colloquy makes clear, the trial court's conclusion rested on a credibility finding as to when the prosecution learned of Phillips, the steps it took to notify the defense of its intention to call him as a witness, and the defense attorneys' actions in monitoring their incoming mail. Clearly, because petitioner's presence could not have aided the trial court in any appreciable way in its making of these findings, there was no violation of petitioner's constitutional right to be present.

Courts have held that a defendant's constitutional right to be present is not *ipso facto* violated when the trial court has conducted conferences, at the bench or in chambers, in the defendant's absence. For example, in *Haywood v. Portuando,* 288 F.Supp.2d 446, 465–66 (S.D.N.Y.2003), the court held that a defendant's constitutional right to be present was not violated by his absence from a hearing on the issue of whether the defense's use of peremptory strikes violated *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *See also State v. Smulls,* 935 S.W.2d 9, 17 (Mo.1996) (en banc) (holding that defendant's absence from hearing on whether the prosecution had violated *Batson* did not violate his constitutional right to be present), *cert. denied* 520 U.S. 1254, 117 S.Ct. 2415–16, 138 L.Ed.2d 180 (1997). The rationale offered by the *Haywood* court for its holding was that, because the determination as to whether the prosecution had committed a *Batson* violation depended upon the trial court's assessment of the reasons offered by the defendant's attorney, not the defendant himself, for the use of the peremptory strikes at issue, the defendant's presence "would not have had a 'reasonably substantial' relation to his opportunity to defend against the charges," and so did not violate his constitutional right to be present. *Haywood,* 288 F.Supp.2d at 466 (quoting *Snyder,* 291 U.S. at 105–06, 54 S.Ct. at 332); *see also Smulls,* 935 S.W.2d at 17 (concluding that defendant's absence from hearing on *Batson* violation did not violate his right to be present

because the defendant "had nothing to do or gain from his presence"). Similarly, the resolution of the discovery issue before the trial court during the hearing from which petitioner was absent required the trial court to make a factual determination about the conduct and reasons therefor of petitioner's counsel, not petitioner. Petitioner's presence "would not have had a 'reasonably substantial' relation to his opportunity to defend against the charges," and his absence did not violate his constitutional right to be present. *Haywood,* 288 F.Supp.2d at 466 (quoting *Snyder,* 291 U.S. at 105–06, 54 S.Ct. at 332).

As for petitioner's second argument, it rests on an incorrect reading of the record. The trial court did not rule on the other objections raised by defense counsel, but declined to rule on them in advance of trial. The trial court was within its discretion to do so. *See, e.g., Martinez,* 824 A.2d at 448; *cf.* Rule 5–103(c) (requiring "[p]roceedings [to] be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to a jury by any means"). Because the trial court did not make such a ruling, and left defense counsel's evidentiary objections to Phillips' testimony at trial, petitioner's defense was not harmed by his absence when these objections were first raised by his counsel. Inasmuch as the trial court reserved ruling on the evidentiary objections raised by defense counsel, this case is distinguishable from those in which courts have held that a defendant's constitutional right to be present was violated because of the defendant's absence during a conference on the admissibility of evidence. *Compare, e.g., Robinson v. Commonwealth,* 445 Mass. 280, 837 N.E.2d 241, 246–47 (2005) (holding that in the specific case, defendant waived his right to be present at the suppression hearings, but that a suppression hearing is critical stage of proceedings and that because the hearing "would have required the taking of evidence and also involved the admissibility of substantial evidence that could determine the outcome of the case, the defendant was entitled . . . to be present").

For these reasons, I would affirm the judgment of the Court of Special Appeals.

### III.

Finally, I turn to the majority's tone and criticisms of the trial judge. The record does not support the majority's conclusions. Not content to reverse petitioner's conviction on constitutional grounds, the majority then proceeds to admonish, unfairly, the trial judge's rulings and his conduct of the trial. The majority accuses the judge of taking over the party's case and of "becoming an advocate for the State." Maj. op. at 541–42, 898 A.2d at 436–37. I do not agree that the trial judge "[took] over the party's case." *Id.* at 543, 898 A.2d at 437–38. As discussed above, a trial court has the responsibility to control the trial, and, incident to this responsibility, has the authority to request a proffer of evidence.

Requesting a proffer was not an abuse of discretion, but rather, under the circumstances of this case, simply a prudent step taken to save trial time and expense, and was well within the discretion of the trial court. *See Martinez,* 824 A.2d at 448. It is important to remember that this case was tried before a jury, and the trial judge was cognizant that he had a jury waiting to come into the courtroom. The judge was coming up against the 3 day weekend—Memorial Day holiday, and was trying to avoid stretching the case over the long weekend.[6] At the prompting of the Assistant State's Attorney, the trial judge requested a proffer as to the substance of the witnesses testimony. This action, in and of itself, is not error. Indeed, the trial court reviewed the admissibility of the State's evidence out of the jury's presence when it reviewed the transcript and videotape of Officer Mercer's deposition. The trial judge was patient with defense counsel, and repeatedly tried to understand the purpose for which counsel

---

6. To be sure, the impending holiday and juror schedules do not trump due process concerns. They are, however, legitimate concerns of the trial court and under the circumstances presented herein, the court did not abuse its discretion in the procedure employed.

wished to present Officer Patel and Ms. Blizzer. This conclusion is supported by the transcript.

The trial court had difficulty understanding the purpose for which defense counsel wished to call the witnesses. I can understand the trial court's difficulty. Defense counsel's response to the court's questions as to relevancy was a moving target. For example, counsel alluded to a videotape on the bus. When pressed by the court, defense counsel conceded that the tape was inoperable on the night in question, and therefore "there [was] a benign reason for [it not being presented]." She told the court as follows:

> "Right, and I am not suggesting that I am asking for a missing evidence rule or anything, instruction on that particular issue; but I still think that I am entitled to ask him which bus route he would have—what time the bus would have been there, that he sought out that bus—."

The court then ruled as follows:

> "[W]ith respect to the issue of the tape, it would appear to me that the only potential relevance would be if you could fashion [some] argument that the Government failed to do something that they should have done, but the proffer is that they did locate a bus that they believed to be the bus, they tried to get the tape but the tape was inoperable. So, in light of that proffer, ... if the explanation were presented to the jury, it would have no evidentiary significance and it could not be held against the State for a failure to conduct an adequate investigation mindful of their burden. So I will not permit that either."

On this issue, the trial judge was correct.

As to Officer Wells, defense counsel conceded that he had never been subpoenaed as a witness and had not been included by defense counsel on the list of witnesses the court identified to the jury before trial during voir dire. Nonetheless, the judge went beyond any required measures and gave the defense an opportunity overnight to locate the witness. The court told defense counsel as follows:

> "With respect to Wells, what I will do, if he is the only witness that you have remaining, in light of your client's

statement that he is not going to testify—elects not to testify in this case—we will simply, because we are going to have to review instructions anyway, I will leave the case open until tomorrow morning, and you can try and track down Wells and see if you can get him in here; but, again, if Wells is only—if your only purpose in calling Wells is to have him testify about what other people told him, then I am not going to admit that through Wells."

The majority notes that Officer Wells would not have been available to testify and that counsel conceded at oral argument that Officer Wells would have been unavailable. Maj. op. at 527, n. 9, 898 A.2d at 428, n. 9.

Considering all the circumstances and the entire record, I find no basis for the majority's contentions that the trial judge co-opted petitioner's case and became an advocate for the prosecution.

Judge HARRELL has authorized me to state that he joins in the views expressed in this opinion.